Rob Bonta
Attorney General of California
Heather B. Hoesterey
Supervising Deputy Attorney General
John D. Echeverria
Deputy Attorney General
State Bar No. 268843
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 510-3479
 Fax: (415) 703-1234
 E-mail: John.Echeverria@doj.ca.gov
*Attorneys for Defendant Shirley N. Weber,*
*in her official capacity as California*
*Secretary of State*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **R. J. BEABER and A. W. CLARK,** | 2:21-cv-6558-MWF-(KSx) |
| Plaintiffs, | **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR DECLARATORY RELIEF AND PRELIMINARY INJUNCTION** |
| v. | |
| **SHIRLEY N. WEBER, as California Secretary of State,** | Date:        August 30, 2021 |
| Defendant. | Time:        10:00 a.m. |
| | Courtroom:   5A |
| | Judge:       Hon. Michael W. Fitzgerald |
| | Trial Date:  Not set |
| | Action Filed: 8/13/2021 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................1

BACKGROUND .........................................................................................2

    I.    California's Recall Process ................................................2

    II.   The 2021 Recall Election ..................................................4

    III.  The Litigation ...................................................................5

LEGAL STANDARD ..................................................................................6

ARGUMENT ...............................................................................................7

    I.    Plaintiffs Fail to Show that they are Entitled to a Preliminary Injunction ............................................................7

        A.    Plaintiffs Are Not Likely to Succeed on the Merits .................7

            1.    Strict Scrutiny Does Not Apply Because Section 15(c) Minimally Burdens the Right to Vote ..................8

            2.    Section 15(c) Furthers Important Governmental Interests ...........................................................11

        B.    The Equitable Factors for a Preliminary Injunction Weigh Decisively Against Enjoining the Recall Election ..................12

            1.    Irreparable Harm .........................................................12

            2.    The Balance of the Equities and the Public Interest.......13

    II.   Plaintiffs Fail to Satisfy the Heightened Standard for a Mandatory Preliminary Injunction that Would Alter the Status Quo ....................................................................................15

CONCLUSION ..........................................................................................16

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*All. for the Wild Rockies v. Cottrell*
  632 F.3d 1127 (9th Cir. 2011)..........................................................................7

*Ariz. Dream Act Coal. v. Brewer*
  757 F.3d 1053 (9th Cir. 2014).........................................................................15

*Bates v. Jones*
  131 F.3d 843 (9th Cir. 1997)...........................................................................10

*Burdick v. Takushi*
  504 U.S. 428 (1992)...............................................................................7, 8, 12

*De Bottari v. Melendez*
  44 Cal. App. 3d 910 (1975)................................................................................9

*Disability Law Ctr. of Alaska v. Meyer*
  484 F. Supp. 3d 693 (D. Alaska 2020) ............................................................15

*Dudum v. Arntz*
  640 F.3d 1098 (9th Cir. 2011)............................................................................8

*Garcia v. Google*
  786 F.3d 733 (9th Cir. 2015)...........................................................................16

*Gray v. Sanders*
  372 U.S. 368 (1963).........................................................................................10

*In re Hickenlooper*
  312 P.3d 153 (Colo. 2013) ..............................................................................10

*Kam-Ko Bio-Pharm Trading Co. Ltd.-Australia v. Mayne Pharma
  (USA) Inc.*
  560 F.3d 935 (9th Cir. 2009)...........................................................................15

*Legislature v. Eu*
  54 Cal. 3d 492 (1991) .....................................................................................10

ii

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3
4
*Moore v. Ogilvie*
  394 U.S. 814 (1969)..................................................................................11

5
6
*Nken v. Holder*
  556 U.S. 418 (2009)..................................................................................13

7
8
*Oakland Tribune, Inc. v. Chronicle Pub. Co.*
  762 F.2d 1374 (9th Cir. 1985).................................................................12

9
*Partnoy v. Shelley*
  277 F. Supp. 2d 1064 (S.D. Cal. 2003) ...............................................9, 10

10
11
*Pub. Integrity All., Inc. v. City of Tucson*
  836 F.3d 1019 (9th Cir. 2016)...............................................................7, 8

12
13
*Reynolds v. Sims*
  377 U.S. 533 (1964)..................................................................................11

14
15
*Rupp v. Becerra*
  2018 WL 2138452 (C.D. Cal. May 9, 2018) ...........................................13

16
17
*Soltysik v. Padilla*
  910 F.3d 438 (9th Cir. 2018)......................................................................7

18
19
*Stanley v. Univ. of So. Cal.*
  13 F.3d 1313 (9th Cir. 1994).....................................................................15

20
21
*Sw. Voter Registration Educ. Project v. Shelley*
  344 F.3d 914 (9th Cir. 2003)...............................................................13, 14

22
*Wesberry v. Sanders*
  376 U.S. 1 (1964)......................................................................................11

23
24
*Winter v. Nat. Res. Def. Council, Inc.*
  555 U.S. 7 (2008)..............................................................................6, 7, 13

25
26
27
28

# TABLE OF AUTHORITIES
## (continued)

Page

STATUTES

California Election Code
    § 1602(c)(2) ....................................................................14
    § 1602(d)(1) ....................................................................14
    § 1605(a) ........................................................................14
    § 3000.5 .........................................................................14
    § 8020 ............................................................................3
    § 8103 ............................................................................3
    § 8106 ..........................................................................3, 5
    § 8106(a)(3) ......................................................................5
    § 8902 ............................................................................3
    § 8903 ............................................................................3
    § 11006 ...........................................................................2
    § 11021 ...........................................................................2
    § 11042 ...........................................................................2
    § 11108(c) ........................................................................3
    § 11108(d) ........................................................................2
    § 11108(e) ........................................................................3
    § 11109 ...........................................................................3
    § 11110 ...........................................................................3
    § 11320(a) ........................................................................3
    § 11320(b) ........................................................................4
    § 11322(a) ........................................................................4
    § 11381 ...........................................................................5
    § 11381(a) .......................................................................3, 5
    § 11383 ...........................................................................4
    § 11384 ...........................................................................4
    § 11385 ...........................................................................4

CONSTITUTIONAL PROVISIONS

United States Constitution
    amend. XIV ..................................................................*passim*

**TABLE OF AUTHORITIES**
**(continued)**

Page

California Constitution
    art. II, § 13 ................................................................................................2
    art. II, § 14(a) ............................................................................................2
    art. II, § 14(b) ............................................................................................2
    art. II, § 15(b) ............................................................................................3
    art. II, § 15(c) ....................................................................................*passim*
    art. II, § 17 ................................................................................................3
    art. IV, § 1 (1911) ...................................................................................12

Colorado Constitution
    art. XXI, § 3 ............................................................................................14

**COURT RULES**

Local Rule 5-4.3.4(a)(2) ...............................................................................6

**OTHER AUTHORITIES**

1911 Cal. Stat., ch. 47 (1911) ....................................................................13

Cal. Dep't of Finance, Gubernatorial Recall Election Costs (July 1,
    2021) ........................................................................................................14

Cal. Sec'y State, California Gubernatorial Recall Election – Frequently
    Asked Questions .........................................................................................9

Cal. Sec'y of State, Certification of the Petition to Recall Governor
    Gavin Newsom (July 1, 2021) ...................................................................4

Cal. Sec'y of State, Recall Petition Calendar of Events (Nov. 17, 2020) ................4

Cal. Sec'y of State, Replacement Candidate for Governor Checklist .....................5

California Gubernatorial Recall Election (July 1, 2021) ..........................................4

Notice of Intent to Circulate Recall Petition (Feb. 20, 201) ....................................4

Senate Bill 152, Cal. Stat. 2021, ch. 34, § 3 (2021) ................................................3

**INTRODUCTION**

Less than one month before California's gubernatorial recall election, and after voters have already begun to cast their ballots, Plaintiffs seek the extraordinary remedy of a preliminary injunction halting the election.  Plaintiffs are not entitled to the relief they seek.  They have not demonstrated their claims will succeed on the merits, and the Court should not interfere with the ongoing recall election at this late stage.

As a threshold matter, Plaintiffs' motion fails to demonstrate any likelihood of success on the merits.  The recall ballot presents two issues:  first, whether California Governor Gavin Newsom should be recalled and, second, if the Governor is recalled, which replacement candidate should succeed him and serve the remainder of the term.  Pursuant to section 15(c) of article II of the California Constitution, the Governor may not be listed as a candidate on the second issue to replace himself if the recall is approved.  Contrary to Plaintiffs' claims, this limitation does not violate the Equal Protection Clause or the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  Every registered voter has an equal right to cast a single vote on either issue presented on the recall ballot, on both issues, or on neither issue.  A voter need not cast a vote on one issue—nor vote in any particular way—to vote on the other.  All votes cast in the recall election are given equal weight.  Section 15(c) is constitutional because it does not severely burden the right to vote, and it furthers an important government interest in effectuating the purpose of the right of recall.

In addition, the equitable factors considered on a motion for preliminary injunction all weigh decisively against the relief Plaintiffs seek.  Plaintiffs' requested relief, if granted, would substantially interfere with the orderly conduct of the pending recall election, which would cause substantial harm to the State and is not in the public interest.

1    Injunctive relief is especially unwarranted here, where Plaintiffs seek a

2    disfavored mandatory preliminary injunction that would alter the status quo and

3    enjoin an election that is in progress.  Because Plaintiffs seek a mandatory, and not

4    merely prohibitory, preliminary injunction, they must satisfy the heightened burden

5    of showing that the facts and the law *clearly favor* injunctive relief, in addition to

6    satisfying the equitable factors required for injunctive relief.  Plaintiffs fail to meet

7    that demanding standard.

8                                    **BACKGROUND**

9    **I.    CALIFORNIA'S RECALL PROCESS**

10    "Recall is the power of the electors to remove an elective officer."  Cal. Const.

11    art. II, § 13.  The recall process begins when a "notice of intention" to circulate a

12    recall petition is served on the officer that is the subject of the recall attempt and

13    filed with the California Secretary of State.  Cal. Elec. Code §§ 11006, 11021; *see

14    also* Cal. Const. art. II, § 14(a).  The proponents of the recall then must prepare a

15    recall petition and submit it to the Secretary of State for review.  Cal. Elec. Code

16    § 11042.  The Secretary of State must determine whether the "form and wording of

17    the proposed petition" meet the requirements of the California Elections Code and,

18    if so, provide notice to the recall proponents that the petition may be circulated to

19    collect signatures.  *Id.*  Proponents then have 160 days to file petitions signed by a

20    sufficient number, as determined by a percentage of votes cast in the last

21    gubernatorial election, of electors.  Cal. Const. art. II, § 14(a), (b).

22    At the conclusion of the signature-gathering process, if the Secretary of State

23    determines that a sufficient number of verified signatures has been collected for a

24    recall election, a series of statutorily prescribed steps must occur.  The California

25    Department of Finance must prepare an estimate of the costs of the recall election

26    within 30 business days, and submit this estimate to the Governor, the Secretary of

27    State, and the Chairperson of the Joint Legislative Budget Committee.  Cal. Elec.

28    Code § 11108(d).  The Joint Legislative Budget Committee must then review and

comment on the estimate submitted by the Department of Finance within 30 calendar days. *Id.* § 11108(e). In addition, the Secretary of State must certify to the Governor the sufficiency of the signatures for a recall election. *Id.* §§ 11108(c), 11109. The Secretary may make this certification either when the Joint Legislative Budget Committee's 30-day review period concludes or as soon as the Legislature has appropriated the necessary funds to conduct the recall election and has designated funds for that purpose in the Budget Act or in another statute. *Id.* § 11108(e); S.B. 152, Cal. Stat. 2021, ch. 34, § 3.

Upon receiving certification of the sufficiency of the recall petition from the Secretary of State, the Governor shall publish a notice for the holding of the recall election. Cal. Elec. Code § 11110. In cases in which the Governor is the subject of the recall, as is the case here, the recall duties must be performed by the Lieutenant Governor. Cal. Const. art. II, § 17. A recall election must be called and held not less than 60 days, nor more than 80 days, from the date that the Secretary of State certifies the sufficiency of the recall petition's signatures, unless the recall election can be consolidated with another statewide election within 180 days of certification. *Id.* § 15(b).

Once a recall election has been scheduled, potential candidates to replace the official can attempt to qualify for the ballot by filing certain paperwork and disclosures and submitting any required filing fees. *See* Cal. Elec. Code §§ 8020, 8103, 8106, 8902, 8903, 11381(a). Thereafter, the Secretary of State must "certify the names of the candidates to be placed on the ballot by the 55th day prior to the election." *Id.* § 11381(a). After the list of candidates is set, elections officials prepare the layout of the recall ballots. The recall ballot has two parts. First, the ballot poses the following question (with statutorily prescribed language): "Shall [name of officer sought to be recalled] be recalled (removed) from the office of [title of office]?" *Id.* § 11320(a). To the right of this question, the words "Yes" and "No" appear on separate lines with an enclosed voting space to the right of each

option.  *Id.* § 11320(b).  Second, the ballot lists the names of qualified candidates to assume office if the recall is approved.  *Id.* § 11322(a).  Under the California Constitution, "[t]he officer [who is the subject of the recall] may not be a candidate" on the second issue of the recall ballot.  Cal. Const. art. II, § 15(c).

If a majority of the votes on the recall question are "Yes," the officer is removed from office and "the candidate receiving the highest number of votes for the office" on the second issue "shall be declared elected for the unexpired term of the recalled officer."  Cal. Elec. Code §§ 11384, 11385.  If "one-half or more" of the votes on the recall question are "No," "the officer sought to be recalled shall remain in office."  *Id.* § 11383.

## II.   THE 2021 RECALL ELECTION

On February 20, 2020, proponents of recalling Governor Newsom served a "notice of intent" on the Governor.[1]  On June 10, 2020, the Secretary of State approved the petition for circulation.[2]  The signature-gathering period lasted until March 17, 2021.[3]  On July 1, 2021, following the Legislature's appropriation of funds to conduct the recall election, Defendant Shirley N. Weber, in her official capacity as the California Secretary of State ("Defendant"), certified to the Lieutenant Governor that the recall organizers had collected and submitted the requisite number of signatures.[4]

On July 1, 2021, the Lieutenant Governor issued a proclamation ordering that a special statewide election be held on September 14, 2021.[5]  Shortly thereafter, Defendant published the September 14, 2021, California Gubernatorial Recall

---

[1] *See* Notice of Intent to Circulate Recall Petition (Feb. 20, 201), *available at* https://bit.ly/2WgLknc.
[2] *See* Cal. Sec'y of State, Recall Petition Calendar of Events, at 1 (Nov. 17, 2020), *available at* https://bit.ly/3k6Ntdm.
[3] *See id.*
[4] Cal. Sec'y of State, Certification of the Petition to Recall Governor Gavin Newsom (July 1, 2021), *available at* https://bit.ly/3sxxJUo.
[5] Cal. Lt. Gov., Proclamation Calling for the California Gubernatorial Recall Election (July 1, 2021), *available at* https://bit.ly/3swhqqO.

Election Calendar, which set forth the numerous deadlines and milestones leading up to the recall election, in accordance with timelines established by statute.[6]

Under California Elections Code section 11381, individuals wishing to be a candidate in the recall election were required to file nomination papers, declarations of candidacy, and any candidate statements by July 16, 2021—the 60th day before the September 14 recall election. *See* Cal. Elec. Code § 11381(a). Individuals seeking to qualify as replacement candidates were required to file with the local county elections office, no later than July 16, 2021, the following materials: (1) a filing fee of $4,194.94, or 7,000 voter signatures in lieu of the filing fee; (2) a Declaration of Candidacy; and (3) nomination petitions with at least 65 valid signatures of registered voters. Decl. of Joanna Southard ("Southard Decl.") ¶ 3.[7]

On July 19, individuals interested in being considered as a write-in candidate for the recall election could begin submitting their statements of candidacy and nomination papers with county election officials. Southard Decl. ¶ 4; Cal. Elec. Code § 8601 (providing that statement and nomination papers for write-in candidates shall be available on the 57th day prior to the election). Write-in candidates may submit their paperwork through August 31, 2021. Southard Decl. ¶ 4.

The recall election is well underway; ballots have been printed and are being mailed to every registered voter in the State, and voters have begun to return their ballots. Southard Decl. ¶¶ 2, 5-6.

## III. THE LITIGATION

On August 13, 2021, Plaintiffs R. J. Beaber[8] and A. W. Clark filed their complaint against Defendant. The complaint asserts that section 15(c) of article II

---

[6] *Supra* note 2.
[7] *See also* Cal. Sec'y of State, Replacement Candidate for Governor Checklist, *available at* https://bit.ly/2W7sPBl; *see also* Cal. Elec. Code § 8106(a)(3) (requiring 7,000 signatures in lieu of filing fee for statewide office).
[8] On August 18, 2021, Plaintiffs filed a notice of voluntarily dismissal, dismissing the claims of Plaintiff R. J. Beaber. Dkt. 21.

of the California Constitution—which prohibits the officer who is the subject of the recall from being listed as a replacement candidate on the recall ballot—violates Plaintiffs' rights to equal protection and due process under the Fourteenth Amendment to the United States Constitution.  Dkt. 1 ¶ 15.  Plaintiffs pray for a declaration that section 15(c) is unconstitutional "as a matter of law and as sought to be applied" and injunctive relief "prohibiting the use of [section 15(c)] in the Sept. 14, 2021 recall election."  *Id.* at 5 (Prayer for Relief).

On August 14, 2021, Plaintiffs filed a motion for declaratory relief and preliminary injunction, requesting that the Court either enjoin the recall election "entirely" or enjoin the recall election "insofar as it implements [section 15(c)], so that were [the election] to be held it would need to include Governor Newsom's name as a potential candidate for Governor, were question 1 to receive a majority of votes and pass."  Dkt. 10.  Plaintiffs also filed an ex parte application to set the briefing schedule and hearing date on their motion.  Dkt. 13.

On August 17, 2021, Defendant accepted service of the summons and complaint, and the parties' counsel met and conferred about the motion.  The parties agreed to request a court order setting an accelerated briefing and hearing schedule.  On August 18, 2021, the Court adopted the schedule agreed-to by the parties.  Dkt. 19.[9]

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Plaintiffs requesting a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they will likely suffer irreparable harm in the absence of

---

[9] On August 18, 2021, Plaintiffs filed a stipulation to set the briefing schedule and hearing date to which the parties had agreed.  Dkt. 17.  However, Plaintiffs filed this stipulation without first obtaining undersigned counsel's approval to file the document, as required under Local Rule 5-4.3.4(a)(2).  Neither that stipulation, which was filed without authorization, nor Defendant's agreement to an expedited briefing and hearing schedule, waived any defenses that may be available to Defendant.

preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Id.* at 20. Alternatively, plaintiffs may demonstrate that "serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiffs'] favor," if they also show a likelihood of irreparable injury and that the injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (quotation omitted).

## ARGUMENT

### I. PLAINTIFFS FAIL TO SHOW THAT THEY ARE ENTITLED TO A PRELIMINARY INJUNCTION

#### A. Plaintiffs Are Not Likely to Succeed on the Merits

While "'voting is of the most fundamental significance under our constitutional structure,'" "[i]t does not follow . . . that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Ill. Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)). It is a matter of "[c]ommon sense, as well as constitutional law," that "government must play an active role in structuring elections," *id.*, and "any election system 'inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends.'" *Soltysik v. Padilla*, 910 F.3d 438, 444 (9th Cir. 2018) (quoting *Burdick*, 504 U.S. at 433). To accommodate this inevitability, the U.S. Supreme Court has developed a "sliding scale test, where the more severe the burden [on the right to vote], the more compelling the state's interests must be." *Id.*

The balancing test set forth by the Supreme Court in *Burdick* provides the "appropriate standard of review for laws regulating the right to vote." *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016). Strict scrutiny applies to a state election law only when First and Fourteenth Amendment rights "are subjected to 'severe' restrictions." *Burdick*, 504 U.S. at 434 (citation

omitted).  "But when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions."  *Id.* (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). The Ninth Circuit has "repeatedly upheld as 'not severe' restrictions that are generally applicable, evenhanded, politically neutral, and protect the reliability and integrity of the election process."  *Dudum v. Arntz*, 640 F.3d 1098, 1106 (9th Cir. 2011) (citation and alterations omitted).

The *Burdick* test applies to Plaintiffs' claims here.  *See Pub. Integrity All., Inc.*, 836 F.3d at 1027 (applying "*Burdick* balancing approach" to equal protection claim after finding no basis for "one person, one vote" argument); *Dudum*, 640 F.3d at 1106 n.15 ("The Supreme Court has addressed [due process and equal protection] claims collectively using a single analytic framework." (citing *Anderson*, 460 U.S. at 787 n.7)).  Section 15(c) is constitutional under the *Burdick* test.

### 1. Strict Scrutiny Does Not Apply Because Section 15(c) Minimally Burdens the Right to Vote

The constitutional bar on the Governor's eligibility to be a candidate to replace himself in the event of a successful recall vote does not severely burden the right to vote or otherwise violate the principle of "one person, one vote."  Mem. of P. & A. ("Mem.") at 4.  Plaintiffs argue that section 15(c) is unconstitutional because it purportedly "gives to voters who vote to recall the Governor two votes—one to remove him and one to select a successor"—while "limit[ing] to only one vote the franchise of those who vote to retain him and that he not be recalled."  Mem. at 3-4; *see also id.* at 4 (claiming that a person who votes for the recall and for a replacement candidate has "twice as many votes as a person who votes against [the] recall.").  That is incorrect.  All registered voters in California have the option of

casting one vote on either issue on the recall election ballot, on both issues, or on neither issue.[10]

Plaintiffs argue the Governor should be listed as a replacement candidate to remedy the purported constitutional violation. Mem. at 7-8. But that would potentially raise its own constitutional concerns. The Governor is a candidate on the first question. *See De Bottari v. Melendez*, 44 Cal. App. 3d 910, 923 n.14 (1975) ("[A] vote against the recall question is a vote for the challenged official and therefore the challenged official is a candidate even in the recall election."). If the current Governor were also listed on the second question, as Plaintiffs claim the Constitution requires, voters would be able to vote for that candidate twice.

The recall election may be viewed as "present[ing] two separate and distinct questions to be voted on"—whether a particular officer should be *removed* from office and who should be *elected* as the successor if the recall is approved, respectively—which are governed by different rules and potentially involve different considerations. *See Partnoy v. Shelley*, 277 F. Supp. 2d 1064, 1074 (S.D. Cal. 2003) (rejecting argument that "the incumbent is, in effect, on the same ballot as the potential successors"). A voter may oppose a recall of an official for a variety of reasons but support a particular replacement candidate if the recall is approved. And a voter may support a recall of an official but oppose all of the listed replacement candidates. California's recall procedures are not constitutionally infirm simply because voters are asked both questions on a single ballot.

Courts have upheld far more burdensome restrictions on voting under the Fourteenth Amendment, including term limits that bar a candidate from standing for a particular office indefinitely where that candidate has served a particular

---

[10] *See, e.g.*, Cal. Sec'y State, California Gubernatorial Recall Election – Frequently Asked Questions ("Voters can vote on either one or both parts of the recall ballot. A voter can vote 'no' to the question of removing the current elected officer from office and also select a replacement candidate."), *available at* https://bit.ly/3z560Ni.

number of terms in that office.  *Bates v. Jones*, 131 F.3d 843, 847 (9th Cir. 1997) (en banc) (holding that California's "lifetime term limits do not violate the plaintiffs' first and fourteenth amendment rights"); *Legislature v. Eu*, 54 Cal. 3d 492, 518 (1991) (holding that California's term limits do not violate equal protection rights due, in part, to "the voters' continued right to vote for any qualified candidates, as well as the candidates' ability to run for other public offices").  Indeed, while Plaintiffs may not like the fact that they cannot vote for the Governor to replace himself, in the event that the recall succeeds, as demonstrated by the law upholding term limits, there is no absolute right to vote for any particular candidate in any particular election.  The candidate must be legally qualified to run for the office.  A limited restriction on the ability of an official who is the target of a recall election to be a replacement candidate in the successor election does not severely burden voting rights—to the contrary, it promotes the purpose of the right to recall.

California's recall procedure is in stark contrast to schemes that have been held to severely burden Fourteenth Amendment rights.  Prior to the 2003 California gubernatorial recall election, California law had required voters to cast a vote (either yes or no) on the first issue on the recall election ballot to be eligible to cast a vote in the successor election, which was held to severely burden voters' rights by compelling speech and "effectively bar[ring some voters] from having their otherwise valid vote for a gubernatorial successor counted."  *Partnoy*, 277 F. Supp. 2d at 1075; *see also In re Hickenlooper*, 312 P.3d 153 (Colo. 2013) (similar holding with respect to similar state constitutional provision).  In the pending recall election, by contrast, all voters have the ability to vote once on each issue on the ballot, regardless of whether they elect to vote on each issue or only one of the issues.

In *Gray v. Sanders*, 372 U.S. 368, 381 (1963), the Supreme Court struck down a state's "county unit" system for political primaries because it valued votes

differently based on geographic location.  And in *Reynolds v. Sims*, 377 U.S. 533 (1964), and *Wesberry v. Sanders*, 376 U.S. 1 (1964)—two seminal voting-rights cases on which Plaintiffs rely, *see* Mem. at 4—the Supreme Court invalidated under the Equal Protection Clause legislative apportionment plans that were not based on population and thus diminished the weight of votes in more populous districts in comparison to votes in less populous districts.  *Reynolds*, 377 U.S. at 568 (invalidating state legislative apportionment plans); *Wesberry*, 376 U.S. at 7-8 (invalidating state law apportioning congressional districts).  In contrast, California does not weigh votes in the recall differently depending on *any* factor, including how a voter answers the first question on the ballot or where the voter resides in the State.  Nor does California require that a replacement candidate receive support from a minimum number of voters in certain counties, which has also been found to violate "one person, one vote" principles.  *See Moore v. Ogilvie*, 394 U.S. 814, 818 (1969) (striking down state law applying "a rigid, arbitrary formula to sparsely settled counties and populous counties alike" in the context of a petition requirement for nomination of presidential electors).  Under California law, every vote counts equally in determining which successor candidate receives the most votes if the recall is ultimately approved by majority vote.

### 2. Section 15(c) Furthers Important Governmental Interests

Because section 15(c) does not severely burden the right to vote, it must be upheld if it merely serves important governmental interests.  Here, the challenged provision can be seen as effectuating the purpose of the recall—to remove an officer who is the subject of a recall for the remainder of the term if a majority of voters approve.  The limitation ensures that an official who is recalled by a majority vote on the first issue is actually "removed" from office, Cal. Const. art. II, § 15(c), and not simultaneously reinstated by a mere plurality on the second issue.  Such a result would frustrate the purpose of the right to recall and the intent of a majority of voters who vote for a recall.

Under the *Burdick* test, section 15(c) survives constitutional scrutiny because it is not subject to strict scrutiny, and it furthers an important governmental interest. Accordingly, Plaintiffs' claims are unlikely to succeed on the merits.

### B. The Equitable Factors for a Preliminary Injunction Weigh Decisively Against Enjoining the Recall Election

In addition to lacking a likelihood of success on the merits, the equitable factors that the Court considers on a preliminary injunction motion weigh decisively against granting Plaintiffs' motion.

#### 1. Irreparable Harm

Plaintiffs claim, in conclusory terms, that they "have demonstrated that they are entitled to a preliminary injunction." Mem. at 7. But they fail to identify any irreparable harm that they will suffer if the election is permitted to continue as scheduled. Plaintiffs appear to claim that one particular outcome of the recall election would cause them harm: a final result in which the recall is approved by a majority of votes, but with more votes being cast against the recall than for the elected successor. Mem. at 3 ("[A]lthough Gov. Newsom could receive more votes against his recall on issue 1, still a candidate who seeks to replace him and who receives fewer votes could be chosen to be Governor."). Such an outcome is speculative and there is nothing unconstitutional about it in any event. Plaintiffs, and all voters, may cast one vote on each issue. And given that Plaintiffs may vote for any qualified candidate on issue two, it is not clear how there is any claimed injury, let alone an irreparable one.

Plaintiffs' delay in bringing this motion "implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). Here, Plaintiffs' lawsuit could have, and should have, been filed long ago. The constitutional provision challenged in this case, barring the official who is the subject of a recall from being a replacement candidate, has been in effect since 1911—for well over a century. Cal. Const. art. IV, § 1 (1911); 1911

Cal. Stat., ch. 47, at 2182 (adding the recall to the California Constitution). Plaintiffs could have challenged it long before the pending recall election. And even after the recall election was set, on July 1, 2021, Plaintiffs waited for more than one month and a half to file suit and seek an injunction of the election. Plaintiffs' delays strongly suggest that any harm flowing from section 15(c) will not be irreparable.

### 2. The Balance of the Equities and the Public Interest

A district court "must balance the competing claims of injury and consider the effect" of the requested relief, paying "particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quotation omitted). The balance of the equities and the public interest "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Indeed, "[t]he Ninth Circuit instructs that when balancing the hardships 'of the public interest against a private interest, the public interest should receive greater weight.'" *Rupp v. Becerra*, No. 17-cv-00746-JLS-JDE, 2018 WL 2138452, at *13 (C.D. Cal. May 9, 2018) (quotation omitted).

If the Court were to grant Plaintiffs' motion, the State, its voters, and the candidates in the recall election would suffer significant harm. As the Ninth Circuit has recognized, judicial "[i]nterference with impending elections is extraordinary." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003). "The decision to enjoin an impending election is so serious that the [U.S.] Supreme Court has allowed elections to go forward *even in the face of an undisputed constitutional violation*." *Id.* at 918 (emphasis added). As the court explained:

> Time and money have been spent to prepare voter information pamphlets and sample ballots, mail absentee ballots, and hire and train poll workers. Public officials have been forced to divert their attention from their official duties in order to campaign. Candidates have crafted their message to the voters in light of the originally-announced schedule and calibrated their message to the political and social environment of the time. They have raised funds under current campaign contribution laws

and expended them in reliance on the election's taking place [as scheduled]. Potential voters have given their attention to the candidates' messages and prepared themselves to vote . . . . These investments of time, money, and the exercise of citizenship rights cannot be returned.

*Id.* at 919.

Here, as explained in the Declaration of the Assistant Chief of the Elections Division, the election is well underway; ballots have been mailed, and voters have begun to cast their ballots. Southard Decl. ¶¶ 2, 5-6; Cal. Elec. Code §§ 3000.5, 1602(c)(2), 1602(d)(1), 1605 (a). The first set of ballots for the recall election, which included the certified list of candidates, were mailed to military and overseas voters on July 31. Southard Decl. ¶ 5. The public display period for the state voter information guide has concluded, and distribution of the more than 13.6 million voter information guides has begun and is required to be completed by August 14, 2021. *Id.* The Governor and potential replacement candidates have begun campaigning. As of August 16, 2021, counties began mailing every active registered voter a vote-by-mail ballot. Cal. Elec. Code § 3000.5. And as of August 17, 2021, counties have made ballot drop-off locations available, opened at least one location for in-person voting, and have begun processing returned ballots. *Id.* §§ 1602(c)(2), 1602(d)(1), 1605(a). The estimated cost of the election is $276 million.[11] Over one million voters have returned their ballots to date. Southard Decl. ¶ 7.

As explained above, section 15(c) of article II of the California Constitution does not violate Plaintiffs' constitutional rights. That does not mean, however, that California's recall procedures are necessarily perfect. While California is not alone in prohibiting an incumbent who is the subject of a recall election from running as a replacement candidate if the recall is approved, *see* Colo. Const. art. XXI, § 3 ("The name of the person against whom the petition is filed shall not appear on the ballot

---

[11] Cal. Dep't of Finance, Gubernatorial Recall Election Costs, at 1 (July 1, 2021), *available at* https://bit.ly/3j2eMpG.

as a candidate for the office."), states have adopted a variety of recall election procedures.  But, any reforms to California's recall procedures should be considered at an appropriate time through a legislative process, with input from the public and elections experts, rather than an expedited judicial proceeding in the midst of the election.  The equities in this case and the public interest weigh heavily against enjoining the ongoing recall election.

Accordingly, Plaintiffs' motion for preliminary injunction must be denied.[12]

## II.   PLAINTIFFS FAIL TO SATISFY THE HEIGHTENED STANDARD FOR A MANDATORY PRELIMINARY INJUNCTION THAT WOULD ALTER THE STATUS QUO

Plaintiffs' motion should be denied for the additional reason that they seek a mandatory preliminary injunction, which is subject to a heightened standard of proof.  In contrast to prohibitory injunctions designed to preserve the status quo during litigation, "mandatory" injunctions "go well beyond simply maintaining the status quo *pendent lite*."  *Stanley v. Univ. of So. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (quotation omitted); *see, e.g.*, *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (holding that requested preliminary injunction was prohibitory "like other injunctions that prohibit enforcement of a new law or policy").  In "cases such as this one, where a party seeks a mandatory injunction that goes well beyond maintaining the status quo [of an election that is underway], courts should be extremely cautious." *Disability Law Ctr. of Alaska v. Meyer*, 484 F. Supp. 3d 693, 699 (D. Alaska 2020) (denying motion for preliminary injunction to require election officials to take certain actions in connection with election).  Preliminary injunctions that would alter the status quo are "particularly disfavored." *Stanley*, 13 F.3d at 1320 (quotation omitted).

---

[12] In addition to moving for a preliminary injunction, Plaintiffs move for declaratory relief.  Mem. at 5.  Plaintiffs' motion for declaratory relief is procedurally improper because "a party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment." *Kam-Ko Bio-Pharm Trading Co. Ltd.-Australia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009).  Even if considered, Plaintiffs' claim for declaratory relief fails because section 15(c) is constitutional. *See supra* Section I.A.

1    Here, Plaintiffs seek a preliminary injunction that would abruptly halt an

2    election that is in process, significantly altering the status quo and requiring election

3    officials at multiple levels of government to take responsive action.  *See* Southard

4    Decl. ¶ 7.  Alternatively, Plaintiffs ask for an injunction permitting the recall

5    election to proceed with the Governor listed as a replacement candidate on the

6    second issue, Mem. at 7-8, which would invariably require election officials to

7    change the rules of the recall election and print new ballots (which cannot be done

8    before the scheduled election date), likely resulting in a postponement of the

9    election.  *See* Southard Decl. ¶ 7.  Plaintiffs' requested relief would cause

10   significant disruption at this late stage of the recall process.

11    Because Plaintiffs seek a mandatory injunction, they must meet a "doubly

12   demanding" burden:  in addition to establishing the equitable factors for injunctive

13   relief, Plaintiffs "must establish that the law and facts *clearly favor* [their] position,

14   not simply that [they] are likely to succeed."  *Garcia v. Google*, 786 F.3d 733, 740

15   (9th Cir. 2015) (en banc).  Plaintiffs fail to make that showing, and the motion

16   could be denied for this reason alone.

17                              **CONCLUSION**

18    For the foregoing reasons, the Court should deny Plaintiffs' motion.

19   Dated:  August 24, 2021                    Respectfully submitted,

20                                              ROB BONTA
                                                Attorney General of California
21                                              HEATHER B. HOESTEREY
                                                Supervising Deputy Attorney General
22

23

24                                              */s/ John D. Echeverria*
                                                JOHN D. ECHEVERRIA
25                                              Deputy Attorney General
                                                *Attorneys for Defendant Shirley N.*
26                                              *Weber, in her official capacity as*
                                                *California Secretary of State*
27

28

                                        16