STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310) 452-3200

JOSEPH REICHMANN (SBN 29324)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310) 452-3200

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| A.W. CLARK,<br><br>Plaintiff,<br><br>v.<br><br>SHIRLEY N. WEBER, as California Secretary of State,<br><br>Defendant. | 2:21-cv-06558-MWF(KSx)<br><br>**PLAINTIFF'S REPLY ON MOTION FOR DECLARATORY RELIEF AND PRELIMINARY INJUNCTION**<br><br>August 30, 2021<br>(Under Submission)<br><br>Judge Michael W. Fitzgerald |

1

1

**TABLE OF CONTENTS**

2

I.      Introduction......................................................................................................3

3

II.     The federal constitutional issues presented must be decided by this

4

        court, who has an "unflagging" obligation to decide those issues.........................4

5

III.    Cal. Const. Art. II, § 15(c) is unconstitutional, under the U.S. Const..................5

6

IV.     The framework for decision..............................................................................8

7

V.      The effect and intent of the "Top Two Candidates Open Primary Act" is

8

        that a California statewide officer must be elected by majority

9

        vote..............................................................................................................10

10

VI.     None of defendant's contentions has any merit..................................................11

11

VII.    The *Winter* factors weigh in favor of an injunction............................................18

12

VIII.   Conclusion....................................................................................................23

13

Declaration of A.W. Clark............................................................................................25

14

Historical Note, on California Recall Elections..............................................................26

15

Addendum, Historical Notes of California Legislature....................................................27

16

17

18

19

20

21

22

23

24

25

26

27

28

i

**Cases**

*Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C.Cir.2014)............................................................. 23

*Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) .................................................................. 8

*Ayers-Schaffner v. DiStefano*, 37 F.3d 726, 727 (1st Cir. 1994) ................................................. 10

*Bates v. Jones*, 131 F.3d 843, 847 (9th Cir. 1977).............................................................................. 9

*Bennett v. Spear*, 520 U.S. 154, 162 (1997) ................................................................. 12

*Bolling v. Sharpe*, 397 U.S. 497 (1954).................................................................................... 7

*Brown v. Bd. of Education*, 347 U.S. 483 (1954) ........................................................................... 7

*Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 799 (2011). ........................................................ 8

*Buckley v. Valeo*, 424 U.S. 1, 114 (1976)...................................................................................... 12

*Burdick v. Takushi*, 504 U.S.  428, 434 (1992)........................................................................... 8

*Cohens v. Virginia*, 6 Wheat. 264, 404 (1821) ..................................................................... 5

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976) ........... 5

*De Bottari v. Melendez*, 44 Cal.App. 3d 910, 923 n. 14 (1975) ............................................. 8

*Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003) .............................................. 21

*Ex parte Yarbrough*, 110 U.S. 651 (1884)............................................................................. 5

*Forest Grove Dist. v. T.A.*, 557 U.S. 230, 239-40 (2009) ............................................. 10

*Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015)........................................................... 23

*Hall v. U.S.*, 566 U.S. 506, 516 (2012)............................................................................ 10

*Hart v. Baca*, 2005 WL 1168422, * 1-2 (C.D.Cal. 2005).......................................................... 20

*IMDB.com, Inc. v. Beccera*, 962 F.3d 1111, 1128 (9th Cir. 2020).......................................... 6

*Legislature v. Eu*, 54 Cal.3d 492, 518 (1991)........................................................................ 9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)....................... 4

*Lorillard v. Pons*, 434 U.S. 575, 580 . . . (1978) ......................................................... 10

*Lovell By and Through Lovell v. Lovell*, 90 F.3d 367, 370 (9th Cir. 1996).................................... 3

*Lujan v Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ....................................................... 13

*Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807-08 (2003)..................... 12

*Nelsen v. King County*, 895 F.2d 1248, 1250-51 (9th Cir. 1990) ................................................. 13

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ................... 20

*Obergefel v. Hodges*, 576 U.S. 644 (2015) .............................................................................. 7

*Pacific Live Stock Co. v. Oregon Water Bd.*, 241 U.S. 440, 447 (1916) ........................................ 5

*Partnoy v. Shelley*, 277 F.Supp. 2d 1064, 1074 (S.D.Cal. 2003) .................................................... 9

*People v. Valencia*, 3 Cal.5th 347, 369 (2017) ............................................................................ 10

*People Who Want an Education v. Wilson (Gregorio T. v. Wilson)*, 59 F.3d 1002 (9th Cir. 1995) .................................................................................................................... 21

*Pub. Integrity All, Inc. v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016) .......................... 19

*Reynolds v. Sims*, 377 U.S. 533, 555 (1964) .................................................................................. 5

*Simon v Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 39 (1976) ..................... 13

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) .................................................... 4

*Texas v. United States*, 523 U.S. 296, 300 (1998) ........................................................................ 12

*United States v. Mosley*, 238 U.S. 383, 386 (1915) ......................................................................... 6

*United States v. State Water Resources Control Bd.*, 988 F.3d 1194, 1208 (9th Cir. 2021) .......... 5

**Statutes**

California Const., Art. II, § 15(c) ............................................................................................. *passim*

California Proposition 14 .......................................................................................................... *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff submits this memorandum of points and authorities in reply to California Attorney General Rob Bonta's[1] opposition to plaintiff's motion for declaratory relief and a preliminary injunction, in this federal civil rights action, brought under 42 U.S.C. § 1983.

---

[1]      It would appear that Bonta may not represent defendant, California Secretary of State Shirley Weber in this action.

Central District of California Local Rule 83-3.1.2 (12/1/20) provides:

**L.R. 83-3.1.2 Standards of Professional Conduct - Basis for Disciplinary Action**. In order to maintain the effective administration of justice and the integrity of the Court, each attorney shall be familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto. These statutes, rules and decisions are hereby adopted as the standards of professional conduct, and any breach or violation thereof may be the basis for the imposition of discipline. The Model Rules of Professional Conduct of the American Bar Association may be considered as guidance.

California State Bar Rule 1.7(a) (11/1/18), Conflict of Interest: Current Clients, provides: "A lawyer shall not, without informed written consent from each client and compliance with paragraph (d), represent a client if the representation is directly adverse to another client in the same or a separate matter."

"A per se or automatic disqualification rule applies when counsel's representation of one client is adverse to the interests of another *current* client. (*Truck Ins. Exchange v. Fireman's Fund, supra,* 6 Cal.App.4th at pp. 1056–1060, 8 Cal.Rptr.2d 228.)" *Responsible Citizens v. Superior Court*, 16 Cal.App. 4th 1717, 1724 (*Askins*) (1993) *reh'g denied, review denied* (emphasis in original).

A lawyer, California Attorney General Rob Bonta, represents California Governor Gavin Newsom in a large plethora of matters, *see e.g.*, *Harvest Rock Church, Inc. v. Newsom*, 2:20-cv-06414-JGB(KKx) (C.D.Cal.), *Coleman v. Newsom*, 2:90-cv-00520-KJM-DB (E.D.Cal. & N.D.Cal.), *Anderson v. Dooley*, 4:15-cv-05120-HSG (N.D.Cal.), *Gateway City Church v. Newsom*, 5:20-cv-08241-EJD (N.D.Cal.), *Perry v. Hollingsworth*, 20-16375 (9th Cir.), *McClusky v. Perry*, 21-15734 (9th Cir.), yet in the instant matter Bonta represents defendant, California Secretary of State, Shirley Weber, and Bonta is taking a position directly adverse to Gov. Newsom's interests, to wit, that a recall election that may oust Gov. Newsom from the Governorship, should proceed.

Loyalty and independent judgment are essential elements in a lawyer's relationship to a client, the duty of undivided loyalty to a current client prohibits undertaking representation directly adverse to that client, and a lawyer may *not* act as an advocate in one matter *against a person the lawyer represents in some other matter*, even when the matters are wholly unrelated. *See Flatt v. Superior Court*, 9 Cal.4th 275 (1994).  Put another way, "No one can serve two masters."  Matthew (the Apostle) 6:24.

2

For over 25 years, the Ninth Circuit has "recognize[d] the rule that when a violation of state law causes the deprivation of a right protected by the United States Constitution, that violation may form the basis for a Section 1983 action[,]. . . [and] Section 1983 limits a federal court's analysis to the deprivation of rights secured by the federal 'Constitution and laws.' 42 U.S.C. § 1983." *Lovell By and Through Lovell v. Lovell*, 90 F.3d 367, 370 (9th Cir. 1996) (citation omitted).

## I. INTRODUCTION

### "The goodness or badness, justice or injustice, of laws varies of necessity with the constitutions of states."[2]

The main problem with § 15(c) is that it gives to voters who vote against Gov. Newsom's recall only one vote -- for or against recall, but it gives to voters who vote for Gov. Newsom's recall two votes -- one for Gov. Newsom's recall, and then one for Governor, but not including Gov. Newsom. Those who vote for recall get two votes, and those who vote against recall get one vote, so that § 15(c) impermissibly and federally-unconstitutionally restricts and thereby dilutes the votes of those voters who are against recall, denying them the equal protection of the laws. A majority of voters, as many as 49.9% voting to retain Gov. Newsom, with 50.1% voting for recall, while as few as a 1.09% plurality of voters (were California's entire population of just

---

This court should enforce L.R. 83-3.1.2, "to maintain the effective administration of justice and the integrity of the Court[,]" *ibid.*, and, at minimum, strike Bonta's opposition to the instant motion.

It is noted that defendant Weber is one of the very few, if not the only, California official whose office has its own, general counsel, Steven Joaquin Reyes, who ethically could have represented Weber in this action, and Weber also had the authority to retain outside counsel to defend herself.

(Coincidentally, Bonta also is on both sides of the Prop. 22, gig-worker lawsuit, having sued the gig companies on the issues covered in Prop. 22 before it passed, and now defending Prop. 22, in Alameda Superior Court, which case he lost on Aug. 20, with Prop. 22 having been declared unconstitutional, under the California Constitution. *Castellanos v. State of California*, RG21088725, Ord. Granting Pet. for Write of Mandate, (Alameda Super. Ct. 08/20/21.)

[2] Aristotle, *Politica*, Book III, 1282b, 9-10. *The Works of Aristotle Translated into English* (Oxford Univ. Press, 1963), Vol. X (*Politica*).

over 22,000,000 registered all to vote) could elect a replacement governor, with about 1,270,000 votes, in a State with a population of about 39,700,000.

Defendant seems to take the position that, while Cal. Const., Art. II, § 15(c) may not be a "wise" provision of law, that does not render it unconstitutional.[3]  If this in fact is what is suggested, it is beside any germane point.  There is an excluded middle[4]:  either § 15(c) is constitutional under the U.S. Constitution, or it is not constitutional under the U.S. Constitution.  That is the substantive issue before this court.

## II. THE FEDERAL CONSTITUTIONAL ISSUES PRESENTED MUST BE DECIDED BY THIS COURT, WHO HAS AN "UNFLAGGING" OBLIGATION TO DECIDE THOSE ISSUES.

The U.S. Supreme Court most recently has held that "our recent reaffirmation of the principle that 'a federal court's "obligation" to hear and decide' cases within its jurisdiction 'is "virtually unflagging."'"  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (citations omitted).

This restated its holding in *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013), that "[f]ederal courts, it was early and famously said, have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.' [Citations omitted.]  Jurisdiction existing, this Court has cautioned, a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.' [Citation omitted.]  Parallel state-court proceedings do not detract from that obligation. [Citation omitted.]"  "[T]he pendency of an action in the state court

---

[3] Plaintiff takes this from defendant's attempt to trivialize plaintiff's contentions, by stating that "Plaintiffs may not like the fact that they cannot vote for the Governor to replace himself . . . ."  Opp. at 10:7-8.

[4] This tautology (here, a necessarily true statement, by its logical form) was first posited by Aristotle:  "everything must be either affirmed or denied, and . . . a thing cannot at the same time be and not be . . . ."  Aristotle, *Metaphysica*, Book B.2, 996b; "A sea fight must either take place tomorrow or not, but it is not necessary that it should take place to-morrow, neither is it necessary that it should not take place, yet it is necessary that it either should or should not take place to-morrow."  *De Interpretatione*, Chapt. 9, 19a, 30.  *The Works of Aristotle Translated into English* (Oxford Univ. Press, 1963), Vols. VIII (*Metaphysica*) & I (*Categoriae and De Interpretatione*).

4

is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[,] . . . [which] stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them[,] . . . [and i]t has been held . . . that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976) (citation omitted).  *See Cohens v. Virginia*, 6 Wheat. 264, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.  The one or the other would be treason to the constitution.  Questions may occur which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously to perform our duty.").  In a case of concurrent jurisdiction, the order in which jurisdiction was obtained is the most important factor.  *Pacific Live Stock Co. v. Oregon Water Bd.*, 241 U.S. 440, 447 (1916).

The law in the Ninth Circuit is the same.  In *United States v. State Water Resources Control Bd.*, 988 F.3d 1194, 1208 (9th Cir. 2021), the court held that "'[g]enerally, as between state and federal courts, the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ."'" (Quoting *Colo. River*, 424 U.S. at 817.)  This is the case because "[f]ederal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'"  *Ibid.*

Thus, it is clear that this court should decide the federal issues presented.

## III.  CAL. CONST. ART. II, § 15(c) IS UNCONSTITUTIONAL, UNDER THE U.S. CONSTITUTION.

"[T]he Constitution of the United States protects the right of all qualified citizens to vote, in state . . . elections." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).  All qualified voters have a constitutionally protected right to vote.  *See e.g. Ex parte Yarbrough*, 110 U.S. 651 (1884) ("*The Ku Klux Klan Cases*").

Plaintiff is a qualified citizen, who, therefore, has a right to vote, who has registered and has a ballot, but who has not yet voted, in the Sept. 14, 2021 California recall election.[5]

---

[5] *See* Historical Note, attached hereto, on California recall elections.

"The right to vote freely for the candidate of one's choice[6] is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government[,] [a]nd the right of suffrage can be denied by debasement or *dilution* of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds*, 377 U.S. at 555.

It is "unquestionable that the right to have one's vote counted is as open to protection * * * as the right to put a ballot in a box." *United States v. Mosley*, 238 U.S. 383, 386 (1915). Furthermore, "[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders,* 376 U.S. 1, 17 (1964).

Pursuant to § 15(c), plaintiff would be barred and prevented from voting freely for the candidate for Governor of plaintiff's choice, and thus plaintiff would be denied the "essence of democracy," because plaintiff's right to vote would be denied completely, debased, and diluted, so that plaintiff would be prohibited and prevented from the free exercise of plaintiff's franchise. Plaintiff would get to vote only once, while all voters who vote for recall, should they prevail on question one, will get two votes, one on the recall issue and then another on the election issue.

This fails and does not pass muster of constitutional[7] scrutiny and must be declared to be so and be enjoined.

Voters who are similarly-situated have a right, under the U.S. Constitution, each and all to have their votes given the same weight, *see e.g. Wesberry*, 376 U.S. at 3, and voters who would be denied *that* right have the right to enjoin elections that would violate that right. *Ibid.* *See Reynolds*, 377 U.S. at 541 (issuance of mandatory injunction warranted when right to vote is impaired).

---

[6] On the second recall ballot question, of who should be Governor if a majority vote for recall on the first question, voters who oppose recall are deprived completely of their right to vote.
[7] Even "[a]n unconstitutional statute that could achieve positive societal results is nonetheless unconstitutional." *IMDB.com, Inc. v. Beccera*, 962 F.3d 1111, 1128 (9th Cir. 2020) (another case in which the California attorney general lost, defending an unconstitutional law).

6

When voters will be deprived of the full benefit of their right to vote, as here plaintiff would be by Cal. Const. Art. II, § 15(c), which violates the Due Process, Equal Protection, and Privileges and Immunities Clauses of the Fourteenth Amendment, those voters have a right to injunctive relief. *Ibid.*

Proposition 14 (2009), a legislatively referred constitutional amendment, provides: "Senate Constitutional Amendment 4 of the 2009-2010 Regular Session (Resolution Chapter 2, Statutes of 2009) . . . **PROPOSED LAW** . . . [t]he People of the State of California hereby find and declare all of the following: . . . All registered voters otherwise qualified to vote shall be guaranteed the *unrestricted right to vote for the candidate of their choice* in all state . . . elections." (Approved, June 10, 2010.) (Emphasis added.) *See* Addendum hereto. Here, this is the relevant legislative finding. Having been passed *after* passage of § 15(c), it supersedes it, to the extent that § 15(c) impinges on "the unrestricted right to vote for the candidate of [any registered voter's] their choice in [a] state . . . election[,]" and here this is the case because § 15(c) would restrict plaintiff's right to vote for Gov. Newsom in the recall election.

When state law grossly discriminates against some voters, by contracting the value of their votes, and by expanding the value of other's votes, since the U.S. Constitution provides that "each vote be given as much weight as any other vote," *Wesberry*, 376 U.S. at 7, then such a state law "cannot stand." *Ibid.* This is so because "one man's [or woman's] vote . . . is to be worth as much as another's" *Id.* at 8. Put another way, equal protection is embodied by the principle that "equals ought to have equality." Aristotle, *Politica*, Book III, 1282b, 20. *The Works of Aristotle Translated into English* (Oxford Univ. Press, 1963), Vol. X (*Politica*). This principle is the basis for the Equal Protection Clause of the U.S. Constitution's Fourteenth Amendment. *See also* Declaration of Independence, Preamble ("all Men are created equal . . . ").[8]

---

[8] The Fourteenth Amendment Equal Protection Clause was the basis for both *Brown v. Bd. of Education*, 347 U.S. 483 (1954) (state laws establishing segregation in public schools are unconstitutional, even if the segregated schools are equal in quality), and *Obergefel v. Hodges*, 576 U.S. 644 (2015) (the fundamental right to marry is guaranteed to same-sex couples). *See also*, *Bolling v. Sharpe*, 397 U.S. 497 (1954), in which the Supreme Court held that the Equal

## IV.  THE FRAMEWORK FOR DECISION.

The analytical framework for disposition of the issues in this matter is that the court "must first consider the character and magnitude of the asserted injury to the rights protected by the . . . Fourteenth Amendment that the plaintiff seeks to vindicate[,] . . . [and] then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).  Moreover, "the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights[,] [and o]nly after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional." *Ibid.*

"[W]hen th[e] rights [in issue] are subjected to severe restrictions[,]" as  here they are, then the regulation must be narrowly drawn to advance a state interest of compelling importance." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  Hence, here, there must be strict scrutiny:  "rigorousness," *id.* at 428, because strict scrutiny "is a demanding standard." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 799 (2011).

Therefore, this court first must determine the extent to which § 15(c) burdens plaintiff's Fourteenth Amendment rights, and whether such burden is "severe."  Here, contrary to defendant's suggestion otherwise, Opp. at 8:18-19, the recall "does . . . severely burden the right to vote or otherwise violate the principle of 'one person, one vote[,]" as discussed both *supra* and *infra*.  In short voters who wish to remove the Governor get two votes, while voters who support the Governor get only one vote, so that the right to vote is diminished, diluted, and is "severely" burdened.  And, there are no evident state interests at all:  indeed, the policy that underlies Prop. 14 is the opposite, to wit, that voters "shall be guaranteed the *unrestricted right* to vote for the *candidate of their choice* in all state . . . elections." *See supra*.  The California case *De Bottari v. Melendez*, 44 Cal.App. 3d 910, 923 n. 14 (1975), cited by defendant in support of her ultimate

---

Protection Clause of the Fifth Amendment imposes various equal protection requirements on the federal government.

characterization that were the Governor listed on recall question two, then "voters would be able to vote for that candidate twice," Opp. at 9:6-10, is misleading, since the manner in which the ballot presently is set-up, voters *are* able to vote against the Governor twice. And, the holding of the case is dictum, but is not identified as such. Indeed, the court held that the issues were moot, and went on to pontificate because it deemed it appropriate to discuss the merits of the constitutional question presented by the appeal, for future guidance. Defense counsel should not have cited this case as he did without identifying this fact and that the footnote cited was dictum.[9] Similarly, *Partnoy v. Shelley*, 277 F.Supp. 2d 1064, 1074 (S.D.Cal. 2003), Opp. at 9:15-17, is not what it is indicated to be. In it, in fact, the court found that the State's interest were not compelling and that plaintiff's important constitutional interests had been violated. In fact, the case stood for an obverse proposition than does the instant matter, to wit, plaintiffs challenged a state statutory requirement, that no vote to be cast in a then-forthcoming gubernatorial recall election could be counted for any candidate unless the voter also voted on the recall question itself, as a violation of their free speech, due process, equal protection, and other constitutional rights. Plaintiffs prevailed, and the case is inapposite here, but for a different proposition, that all candidates were on the same ballot, and this supports that one of plaintiff's contentions herein.[10]

The candidate with the most votes should win, and unless a replacement gubernatorial candidate were to receive more votes than the "no" votes on the first issue -- should the Governor be recalled? -- then Gov. Newsom should be Governor. But § 15(c) renders this impossible, because voters who vote not to recall Gov. Newsom are prevented by § 15(c) from voting for him to be Governor. This furthers no government interest at all, much less any legitimate

---

[9] The court needs to employ a higher level of scrutiny than it otherwise might use, *i.e.*, strict scrutiny, in researching cases cited by defense counsel, since many of the cases he cites are misleading, such as the instant one.

[10] Similarly, both *Bates v. Jones*, 131 F.3d 843, 847 (9th Cir. 1977), and (*Legislature v. Eu*, 54 Cal.3d 492, 518 (1991), both inapposite, as can be seen from defense counsel's parenthetical, partial quotations from both of them. Both have to do with term limits, and not with any issue in the instant matter.

interest, and it denies plaintiff the right to vote for the Governor of plaintiff's choice, and thus plaintiff's right to vote is subjected to deadening restriction, much less severe restriction, in an election that is a drastic form of non-legislature impeachment.

Since use of § 15(c) would bar plaintiff from having plaintiff's valid vote for a gubernatorial successor counted, this court should determine that § 15(c) is a "severe" restriction on both plaintiff's state and federal constitutional right to vote. *See id.* at 434.

A voter may not be denied the right to have their vote count on who should govern, and defendant has failed to advance any evidence that § 15(c) is "narrowly drawn to advance a state interest of compelling importance[,]" *ibid.*, much less any admissible evidence at all.

Every voter has a paramount interest in choosing the person who will govern them, and since the right to vote "is of the most fundamental significance under our constitutional structure[,]" *Ayers-Schaffner v. DiStefano*, 37 F.3d 726, 727 (1st Cir. 1994), plaintiff's right to vote must be enforced and declaratory and injunctive relief should be granted. After 110 years, § 15(c) does not pass constitutional muster.

## V. THE INTENT AND EFFECT OF THE "TOP TWO CANDIDATES OPEN PRIMARY ACT" IS THAT A CALIFORNIA STATEWIDE OFFICER MUST BE ELECTED BY MAJORITY VOTE.

The "Top Two Candidates Open Primary Act," passed by California voters as Prop. 14, on June 10, 2010, and amending Cal. Const. Art. II, §§ 5 & 6, overrode the Constitution's prior recall provision, set forth in Art. II, § 15(c), because it post-dated § 15(c), and there is a legal presumption that a legislature, including the California Legislature, knew of prior legal provisions when it passed later legal provisions. *See Hall v. U.S.*, 566 U.S. 506, 516 (2012) ("'We assume that Congress is aware of existing law when it passes legislation,' *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 . . . (1990)."). *Cf. Forest Grove Dist. v. T.A.*, 557 U.S. 230, 239-40 (2009) ("'Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.' *Lorillard v. Pons*, 434 U.S. 575, 580 . . . (1978)."); *People v. Valencia*, 3 Cal.5th 347, 369 (2017) (there "is a presumption, which we also apply to the Legislature, that the voters, in adopting an initiative, did so being 'aware of existing laws at the time the initiative was enacted.' (*Professional Engineers*

10

*in California Government v. Kempton, supra,* 40 Cal.4th at p. 1048, 56 Cal.Rptr.3d 814, 155 P.3d 226; see also *In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11, 210 Cal.Rptr. 631, 694 P.2d 744.)"). Both the California Legislature and the California electorate were aware of § 15(c), and voted to override it, to the extent it was in conflict with Prop. 14. Prop. 14 supersedes and trumps the provisions of § 15(c) that are inconsistent with the provisions of Prop. 14. Since Prop. 14 requires that California statewide officers be elected by a *majority* vote, and § 15(c) provides for election of a statewide officer -- the Governor -- by a mere "plurality" vote, § 15(c) no longer is operative to this extent, and its non-applicability, therefore, must be declared and its use enjoined.

Put another way, the Top Two Candidates Primary Act in effect means all statewide officers are elected with a majority of the votes because there are only two candidates in a general election. One candidate will receive more votes and since there is only one other candidate, the candidate with the most votes also has a majority of votes. This means that the intent of the voters was that statewide officers are to be elected only with a majority of the vote.

## VI.  NONE OF DEFENDANT'S CONTENTIONS HAS ANY MERIT.

Plaintiff's contentions regarding defendant's arguments are made seriatim, tracking the order in which defendant presents them in the opposition.

(Intro., ¶ 1) There was no constitutional violation until plaintiff received plaintiff's mail in ballot, that did not list Gov. Newsom as a candidate on the second question. Without that violation, plaintiff would not have a case. If a constitutional violation is occurring, the stage at which the recall is in relation to the election is irrelevant. Defendant's position on this issue is the equivalent of saying that someone who currently is in involuntary servitude should not be freed because Labor Day is coming very soon, and the owners of this slave really need the person for a Labor Day Party.

> Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–149, 87

11

S.Ct. 1507, 18 L.Ed.2d 681 (1967); accord, *Ohio Forestry Assn., Inc. v. Sierra Club,* 523 U.S. 726, 732–733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998).

The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction," *Reno v. Catholic Social Services, Inc.,* 509 U.S. 43, 57, n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (citations omitted), but, even in a case raising only prudential concerns, the question of ripeness may be considered on a court's own motion. *Ibid.* (citing *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 138, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974)).

*Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807-08 (2003).

Moreover,

"Absent [a statutory provision providing for immediate judicial review], a regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the [Administrative Procedure Act (APA) ] until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him. (The major exception, of course, is a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately ... .)" *Lujan v. National Wildlife Federation,* 497 U.S. 871, 891, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

*Id.* at 808.  *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580–581, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985) (quoting 13A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3532, p. 112 (1984)).

Here, there were no "factual components" until plaintiff learned his recall ballot had been mailed to him, on Monday, Aug. 9, 2021, Declaration of A.W. Clark, and no "contingent future events" until plaintiff received this notice. And, plaintiff then retained counsel, who filed plaintiff's action within four days, on Aug. 13, 2021.  Doc. 1.  Thus, until that time, the matter plaintiff presents was not ripe for adjudication, because "ripeness is peculiarly a question of timing . . . ." *Buckley v. Valeo*, 424 U.S. 1, 114 (1976), *superseded by statute, on other grounds*, did plaintiff have standing *until that time*.

Standing questions arise as a result of constitutional and prudential limitations on the scope of federal jurisdiction. *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citing *Warth v. Selden,*

12

422 U.S. 490, 498 [1975]).  To satisfy the minimum constitutional requirements for standing under the Case or Controversy requirement of Article III,

> [f]irst, the plaintiff must have suffered an injury in fact - an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); see also, *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 551 (1996). "The necessity that the plaintiff who seeks to invoke judicial power stands to profit in some personal interest remains an Art. III requirement." *Simon v Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 39 (1976).

As to the "injury-in-fact" requirement of the standing test, the Ninth Circuit has held that, to establish standing to seek injunctive relief,

> plaintiffs must demonstrate that a "credible threat" exists that they will again be subject to the specific injury for which they seek injunctive or declaratory relief. [] A reasonable showing of a "sufficient likelihood that the plaintiff will be injured again is necessary. [] The "mere physical or theoretical possibility" of a challenged action again affecting the plaintiff is not sufficient. [] There must be a "demonstrated probability" that the plaintiff will again be among those injured . . . .

*Nelsen v. King County*, 895 F.2d 1248, 1250-51 (9th Cir. 1990) (citations and internal quotation marks largely omitted).  Plaintiff now is "credibly threatened" as to his recall vote.

Here, plaintiff could not have suffered "an injury in fact," and thus did not have standing to sue, until plaintiff received his recall ballot, and wished to exercise his franchise.

(Intro., ¶ 2) The two questions on the ballot are two parts of one question, not two separate questions.  Because the second question is only valid/operative, and of consequence dependent on the result of the first question, to contend that they are two separate questions is inaccurate.  People who support Gov.  Newsom only have a mechanism to voice their support on question one, whereas people who do not support Gov.  Newsom can voice their opposition in

both parts of the recall question, first by voting "yes" to recall him, and second, by voting for a candidate that is not him to assume his position as governor.  This is a clear equal protection violation:  treating equals unequally.[11]  *See supra.*  Also, there is a potential, valid claim that this violates the right of voters to assemble, as well:  since Gov.  Newsom's supporters cannot assemble on the second question, and as a group show their support for Gov.  Newsom, whereas those who oppose Gov.  Newsom are able to assemble on the second question in choosing a governor.

(Intro., ¶ 2)  Defendant states that "[e]very registered voter has an equal right to cast a single vote on either issue presented on the recall ballot, on both issues, or on neither issue." This is incorrect, because those voters who vote in favor of recall on issue one, against Gov. Newsom, get the opportunity to vote against Gov. Newsom twice, by voting for a successor on issue two, so that there is no "equal right to cast a single vote."  Instead, there is an unequal vote for voters who seek Gov.  Newsom's recall, to vote twice for that result.

(Intro., ¶ 3) There would not be "substantial[] interefe[nce] with the orderly conduct of the pending recall election, which would cause substantial harm to the State and [not be] in the public interest" were an injunction to issue, because were an injunction to issue there would be no recall election, and that would not cause any harm to the State, since it would be in the State's interest not to conduct an unconstitutional recall election.  Thus, there is no "important governmental interest" present.  It never can be in any democratic government's interests to act against its federal constitution.  It would be against that interest.

(Intro., ¶ 5) It is incorrect that plaintiff seeks to "alter the status quo," because the status quo ante, before the election, is that there is no election, and therefore, plaintiff seeks to maintain that status quo.

---

[11] As set forth hereinabove, it is not correct, as defendant contends, that "California does not weigh votes in the recall differently depending on *any* factor . . . ."  Opp. at 11:8-9.  The opposite is true:  the votes of supporters of recall are counted twice, while the votes of those who oppose recall are counted only once.  Similarly, it is not the case that "[u]nder California law, every vote counts equally in determining which successor candidate receives the most votes[,]"  *id.* at 16-17, and this is so because plaintiff cannot vote for Gov. Newsom after he votes not to recall him.

(Intro., ¶ 3) Defendant states that plaintiff's request is against the public interest, yet plaintiff is a member of the public and represents a large, multi-million-member class who most certainly is "the public," and whose members' interests should be respected.

(P. 3, bottom) Defendant admits that "the recall ballot has two parts," two parts of one whole, which further supports plaintiff's contention that the recall is not two separate questions, but rather is two parts of the *same* question.

(P. 8, top) Defendant states:  "But when a state election law provision imposes only 'reasonable, non-discriminatory restrictions' upon the First and Fourteenth Amendment rights of voters . . . ."  The provision that Gov. Newsom  cannot be listed as a candidate on the second question is not reasonable, and it clearly is  invidiously discriminatory against the Governor's supporters. Later in the same  paragraph defendant mentions that the Ninth Circuit has "upheld as not severe, restrictions that are 'generally applicable, even-handed, and politically neutral.'" This provision that Gov.  Newsom cannot be on question two is *not* even-handed, since it disadvantages his supporters and is not politically neutral since it gives an upper-hand to Gov. Newsom's political opponents.  This contention is defendant's *ipse dixit* that is contrary to reality.

(P. 9, top) Defendant states that "If the current Governor were also listed on the second question, voters would be able to vote for that candidate twice."  Plaintiff agrees with this, and it would be fair, since to be able to vote for the Governor twice would be equal to his opponents being able to vote *against him twice*, and this implicates equal protection.

(P. 9, ¶ 2) The recall is *not* two, separate and distinct questions to be voted on:  question two is dependent on the outcome of question one, and therefore, they are two parts of one question. The fact that the second question unequivocally is linked to question one makes the recall provisions constitutionally infirm.

(P. 10) Defendant contends that "there is no absolute right to vote for any particular candidate in any particular election." Yet, defendant already has admitted that the Governor already is on the ballot in question one.  The analogy to the law creating term limits does not work.  The issue at hand is that the Governor is only on one *question* of the recall ballot.  If he is

allowed to be on question one, then he should be allowed to be on question two, which simply is part two to these linked questions.

(P. 11) Defendant's biggest error in argument thus far is this: "in contrast, California *does not weigh votes* in the recall differently depending on *any* factor . . . ." (Emphasis added.)  But California *does weigh votes* differently, depending on which part of the question they are on: voters on question one have to form a majority to succeed, whereas voters on question two are allowed to form a plurality to win.  This is unequal, and the issue at hand is this:  Gov. Newsom's supporters are required to achieve at least 50% of the vote to keep him in office, whereas a replacement candidate (and their supporters) can achieve a plurality of votes to elect that candidate. This clearly is unequal and easily elucidated:  Gov.  Newsom could receive 49% of the vote to remain in office, while a candidate with 20% of the vote can become governor. That clearly is *weighing votes differently*, based on which part of the question votes are accrued in.  This is supported by the fact that  the recall is two parts of one question, and not two separate questions.

(P. 11, ult. ¶) The intent of the voters is to have elected officials elected with a majority of votes, under Prop.  14, the Top Two Candidates Primary Act.  *See supra*.  Allowing a plurality on the second part of the recall question to choose a successor would frustrate the voters' (and legislature's) expressed purpose and intention that statewide officials be elected with a majority of the vote.

(P. 11, bottom) Defendant contends that "the limitation ensures that an official who is recalled by a majority vote on the first issue is actually 'removed' and not simultaneously reinstated by a mere plurality on the second issue. Such a result would frustrate the purpose of the right to recall and the intent of a majority of voters who vote for a recall." Bu this does not frustrate the purpose of the right to recall:  the states of Nevada, North Dakota, and Wisconsin, all of which have similar, simultaneous recall election laws, allow for an elected official to run on a recall ballot against other candidates, thus providing equal protection for the potentially recalled, elected officials' supporters.  *See*  Nevada Constitution, Article 2, Section 9 ("Other

16

candidates for the office may be nominated to be voted for at said special election. The candidate who shall receive highest number of votes at said special election shall be deemed elected for the remainder of the term, whether it be the person against whom the recall petition was filed, or another[;]" North Dakota Constitution, Article 3, Section 10 ("The name of the official to be recalled shall be placed on the ballot unless he resigns within ten days after the filing of the petition.  Other candidates for the office may be nominated in a manner provided by law.  When the election results have been officially declared, the candidate receiving the highest number of votes shall be deemed elected for the remainder of the term[;]" Wisconsin Constitution, Article 13, Section 12 ("Unless the incumbent declines within 10 days after the filing of the petition, the incumbent shall without filing be deemed to have filed for the recall election.  Other candidates may file for the office in the manner provided by law for special elections . . . (5) The person who receives the highest number of votes in the recall election shall be elected for the remainder of the term.").

(P. 12) The irreparable harm plaintiff faces is that plaintiff cannot adequately, and with equality vote his support for Gov. Newsom, by voting on both parts of the recall question, while others adequately can vote their opposition on both questions, which gives them two votes and plaintiff only one vote. This unconstitutionally discriminates against plaintiff, and other supporters of Gov. Newsom on account of their support for the Governor, and it violates the both the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment.

Plaintiff did not file suit 100 years ago because plaintiff was not yet alive and the issue affected plaintiff only when he received his recall ballot.  Indeed, the contested recall provision has to be used for a constitutional violation to occur, and plaintiff's asserted lack of haste shows nothing: there are many factors that go into deciding to file a lawsuit and nothing can be assumed about why and when it is filed.

(P. 13) The state, voters, and candidates would not suffer significant harm from an adverse decision to defendant since there is a regularly-scheduled gubernatorial election next year, in 2022.

Plaintiff attempts to maintain the status quo, by ensuring that a majority of votes is required to become a state-wide, elected official in California.  This is consistent with plaintiff's contention regarding Prop. 14, the Top Two Primaries Act, invalidating Section 15(c), and the Legislature's express finding that "[t]he People of the State of California hereby find and declare all of the following:  . . .  All registered voters otherwise qualified to vote shall be guaranteed the *unrestricted right to vote for the candidate of their choice* in all state . . . elections."  *See supra*, and Addendum hereto.

The "finalized" cost of the recall election, as established by the California Finance Department, is $276 million.  Exhibit 1 hereto.  That money already has been spent, it is, as they say, "out the door."  No more money would be spent were the recall election to be enjoined.

The contention that enjoining the recall "would cost the State hundreds of millions of dollars[,]" Declaration of Joanna Southard, in support of the Opposition to the pending motion, Doc. 23-1, at 3:9, is incorrect.  This contention also is irrelevant, since the recall never should have gone forward based on the patently unconstitutional procedure set forth in § 15(c).  And, it is defendant's sole fault for this situation, which she brought upon the State.  Defendant knew that there were claims concerning the unconstitutionality of § 15(c), and ignored them.

**VII. THE *WINTER* FACTORS WEIGH IN FAVOR OF AN INJUNCTION.**

1. Plaintiff is *likely to succeed on the merits* of plaintiff's claims, for the reasons already set forth in the motion and hereinabove.  Contrary to defendant's contention that "the right to vote . . . [is] not absolute[,]" Opp. at 7:11-15, that "the Court therefore has recognized that States retain the power to regulate their own elections[,]" *Burdick*, 504 U.S. at 433 (citations omitted), never has meant that states can conduct unconstitutional elections.  Indeed, *Burdick*, as quoted by defendant, actually recognizes that "[c]ommon sense, as well as *constitutional law*," (emphasis added), must be adhered to:  hence, when "government must play an active role in structuring elections," it is presumed that the carrying out of elections must be pursuant to constitutional principles.  Here, that is not the case.  What *Burdick* actually states on this point is that when it is just a "*mere* fact that a State's system creates barriers . . . tending to limit the field of candidates

from which voters might choose . . . does not of itself compel close scrutiny." *Ibid.* (emphasis added). Here, what defendant is doing, *see supra*, hardly is "mere," but deprives plaintiff and class members of fundamental rights, so that close scrutiny is warranted.

Defendant cites *Pub. Integrity All, Inc. v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016), for the proposition that "the 'appropriate standard of review for laws regulating the right to vote[,]" Opp. at 7:24-26, is set forth in *Burdick*, but omits to state that *Pub. Integrity All, Inc.* states just before this that "state and local government election laws that violate the Constitution are impermissible, *See Wash. State Grange*, 552 U.S. at 451, 128 S.Ct. 1184; *Moore v. Ogilvie*, 394 U.S. 814, 818, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969)[,]" *id.* at 1023-24, as here they are, and what is set forth about how the Ninth Circuit has interpreted *Burdick*:

"not *every* voting regulation is subject to strict scrutiny." *Id.* at 1024. Selectively cherry picking quotes from a case is not a virtue.[12] Here, the State could have no interest at all in holding an unconstitutional recall election. Thus, strict scrutiny applies. Forcing a voter to participate in an unconstitutional election constitutes a "'severe' restriction," *Burdick*, 504 U.S. at 434; Opp. at 7:28, and it is for this reason that strict scrutiny applies. There is no compelling state interest and there is a severe burden on constitutional rights, so that under strict scrutiny defendant loses.

Defendant's characterization of *Burdick* that "[s]trict scrutiny applies to a state election law only when First *and* Fourteenth Amendment rights 'are subjected to "severe" restrictions.' *Burdick*, 504 U.S. at 434." Opp. at 7:26-28 (emphasis added). This misstates what the Ninth Circuit said of *Burdick* in *Pub. Integrity All, Inc.*: "Under *Burdick*'s balancing and means-end fit framework, strict scrutiny is appropriate when First *or* Fourteenth Amendment rights "are subjected to 'severe' restrictions." *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992))." *Pub. Integrity All, Inc.*, 836 F.3d at 1024. Defendant changed the word "*or*" to the word "*and*" and thereby completing changed the holding to require strict scrutiny only when *both* First *and* Fourteenth Amendment rights were asserted. (Again,

---

[12] "[F]ail[ing] to comprehend the actual holding of [a] case . . . [and] manag[ing] . . . to omit any discussion of [a case's] holding" is frowned upon . . . "[¶] [because n]egligence in citing authority to the Court is no virtue . . . ." *Hart v. Baca*, 2005 WL 1168422, * 1-2 (C.D.Cal. 2005).

"[F]ail[ing] to comprehend the actual holding of [a] case . . . [and] manag[ing] . . . to omit any discussion of [a case's] holding" is frowned upon . . . "[¶] [because n]egligence in citing authority to the Court is no virtue . . . ." *Hart v. Baca*, 2005 WL 1168422, * 1-2 (C.D.Cal. 2005). N. 7, *supra*.[13])  Here, this is important because plaintiff asserts only Fourteenth Amendment, and not First Amendment, rights.  Section 15(c) is unconstitutional under strict scrutiny.

Additionally, strict scrutiny applies because it is incorrect that § 15(c) "minimally burdens the right to vote."  Opp. at 8:15-16.  Hardly, does preventing a voter from voting for the candidate of the voter's choice and permitting some voters to have two votes on the same ballot "minimally" burden the right to vote: it eradicates it, because it dilutes the voter's vote by one-half, while multiplying the other voters' votes by a factor of two.  It violates the "one person, one vote" constitutional requirement, which requirement defendant recognizes.  Opp. at 8:19.

Plaintiff should prevail on the first injunction test, prevailing on the merits.

2.  Plaintiff would suffer irreparable harm were his right to vote diminished and/or diluted, as it would be were the recall election to be held.  And, it would be were plaintiff not permitted to vote for Gov. Newsom on issue two.

Defendant's contention that plaintiff "delay[ed] in bringing this motion" and that that "'implies a lack of urgency and irreparable harm,'" is rebutted by plaintiff's declaration.  Plaintiff had no standing to bring his action previously, *see* declaration, and his claim previously was premature and was not ripe.  Had plaintiff not been notified that his recall ballot was on the way and had plaintiff not received that ballot, plaintiff would not have had standing to sue.  Thus, the "implication" spoken of in *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985), fails.  All that this case stands for is that it found there was no irreparable harm such as to support granting an injunction.  Indeed, the reason the denial of a preliminary injunction was denied was that "plaintiff seems to admit, this involves purely monetary harm measurable in damages."  *Id*. at 1376 (the page just before the page cited by defense counsel).

---

[13] If a two strikes and you're out rule were in force, defendant now would be out.  *But see infra*.

20

1   Everything else in this case is dictum.[14]  Again, it is not the recall statute in simple that plaintiff

2   challenges, and plaintiff challenges its application to plaintiff, which he had no standing to

3   challenge until it would be applied to plaintiff.

4        3.  The balance of equities is treated elsewhere, and it tips against defendant and in

5   plaintiff's favor.  Once again, defense counsel cites misleadingly a case, *Rupp v. Becerra*, Opp. at

6   13:13-16, whose holding actually is that "[t]he Court concludes that the legislature has

7   articulated a legitimate government objective for the AWCA . . . ."  This supports plaintiff's

8   contention that the legislature and the people who voted for Prop. 14, because it was enacted to

9   further the legitimate government purpose "to protect and preserve the right of every Californian

10  to vote for the candidate of his or her choice[,]" Prop. 14(a), and that "all registered voters

11  otherwise qualified to vote shall be guaranteed the unrestricted right to vote for the candidate of t

12  heir choice in all state and congressional elections." Prop. 14(b).  Moreover, the government

13  interest is that "[a]ll candidates for a given state or congressional office shall be listed on a single

14  primary ballot[,]" *ibid.*, thus showing that plaintiff's contention that there is but one ballot is

15  correct.  Prop. 14 overrides and supersedes the ancient government interests claimed by

16  defendant.

17       Another case, *Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003) (en banc) (per

18  curiam), is improperly cited by defense counsel.  *See Hart, supra.*  First, defense counsel did not

19  indicate that the case was decided en banc, and second, defense counsel did not indicate the

20  decision was a per curiam one. The court lauds the "counsel's . . . professional presentations to

21  this court." *Id.* at 916.  In its disposition, the en banc court relied on one of plaintiff's counsel's

22  important cases 26 years ago, *People Who Want an Education v. Wilson (Gregorio T. v. Wilson)*,

23  59 F.3d 1002 (9th Cir. 1995), in which Gov. Wilson's Prop. 187 (voter initiative), which sought

24  to deny public education to undocumented children in California schools, and in which an

25

26

27  _____

28  [14] Again, a very careful reading of all of the contents of cases cited by defense counsel is
     warranted, at least because many of those cases are cited for propositions for which they do not
     stand or which are misleading.

21

injunction was granted and upheld by the Ninth Circuit, for the proposition that "we do not review the underlying merits of the case." *Id.* at 1004. Thus, the court never opined on the merits in *Educ. Project*, and simply restated non-case-specific general principles, which defense counsel quotes, as if they were new law. They are not. In that case, mere election procedures -- use of punch cards -- was in issue, and there were not significant, one person, one vote, matters in issue, and hence the court held that it was "speculative" whether or not the use of punch cards would cause harm. Here, there is a certainty that going forward with the recall will, in fact, violate plaintiff's constitutional right to suffrage, a right declared and defined by Prop. 14.

Defendant candidly admits, but with some trivialization language, that "California's recall procedures are necessarily perfect[,]" Opp. at 14:22-23, but wants the court to defer to the "legislative process." *Id.* at 15:3. The "legislative process" already has occurred, and it was approved by the voters in Prop. 14, whose statement of state policy made nugatory the manner in which the recall ballot is structured.

3. Plaintiff has more than met the "heightened standard" for a mandatory preliminary injunction, although that is not required, since plaintiff seeks not a mandatory injunction, but rather a prohibitory injunction.

Contrary to defendant's assertion otherwise, plaintiff *does seek* to maintain the status quo, so that what is sought is a prohibitory injunction, that is sought and that is warranted. Contrary to defendant's contention, plaintiff does not seek an injunction that "prohibit[s] enforcement of a new law or policy," Opp. at 15:17-18, the policy set forth in Prop. 14 is 10 years old, so that the *Ariz. Dream Act Coal.* case cited by defendant is inapposite, because it opines on something that is not sought by plaintiff. The recall procedure is not "a new law or policy;" rather, by comparison, Prop. 14 is the "new law and policy." Again, plaintiff does not seek to "alter the status quo," but seeks to maintain it.

An "abrupt halt," Opp. at 16:1, to the recall is fully warranted, to maintain the status quo that there has not been an election, yet. Halting something that is "in process," *id.* at 2, prevents its completion, before it has done any harm, and that is entirely appropriate. If the election is put

off for a short period of time, to permit defendant to print and send out new, proper ballots, that is far less onerous than permitting the election to go forward in violation of federal Equal Protection and Due Process. A postponement of the election date is better than the debacle of a faulty election.

The law and the facts *clearly favor* plaintiff's position. The last case cited by defendant, Opp. at 16:13-15, is *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc), a case with an enormous number of counsel, that is well-known to this court. It is inapposite because it deals with "a weak copyright claim [that] cannot justify censorship in the guise of authorship." *Id.* at 736. Plaintiff's claim hardly is "weak," and has nothing to do with censorship. It reaffirmed the *Winter* factor: "The first factor under *Winter* is the most important—likely success on the merits. *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C.Cir.2014) ("We begin with the first and most important factor: whether petitioners have established a likelihood of success on the merits."). Plaintiff has established a likelihood of success on the merits, under both *Winter* and *Garcia*, and that "the law and facts *clearly favor* [plaintiff's] position . . . ." *Id.* at 740. But the court so held based on the premise, not applicable here: "Why? . . . [because the] requested injunction required Google to take affirmative action—to remove (and to keep removing) *Innocence of Muslims* from You Tube and other sites under its auspices, whenever and by whomever the film was uploaded. This relief is treated as a mandatory injunction, because it 'orders a responsible party to 'take action.'" *Ibid.* Here, plaintiff requests an injunction that requires defendant to take *no action*, to *stop acting*, to refrain from acting, and to cease administering the recall election. Here, the opposite of "affirmative action" is sought; plaintiff simply requests that defendant keep her hands in her pockets, by doing nothing further. And, the last sentence of *Garcia* appears to limit it to copyright cases: "the district court did not abuse its discretion when it denied Garcia's motion for a preliminary injunction under the copyright laws." *Id.* at 747.

## VIII. CONCLUSION

Every voter, whether they voted for or against recall, has a paramount interest in choosing the person who will govern them. Section 15(c) prevents those voters who will have

23

voted against recall from exercising their paramount interest in choosing the person who will govern them, and thus it is federally-unconstitutional.

The court should declare § 15(c) unconstitutional and enjoin the Sept. 14, 2021 recall election, or order it to be postponed, to be done with new ballots.

Respectfully submitted,

**YAGMAN + REICHMANN, LLP**

By:   /s/ Stephen Yagman
      **STEPHEN YAGMAN**

//

24

**DECLARATION OF A.W. CLARK**

I, A.W. CLARK, declare the following to be true under the penalty of perjury at Los Angeles, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am the plaintiff in this action.

2. On Mon., Aug. 9, 2021, I knew that the recall ballot was on its way to me, because I had signed-up for notifications about the status of my mail-in ballot, and that is the day I received an alert that it was being sent to me. The name of the alert system is Ballot Trax and is offered by the California Secretary of State's office.

3. On that date, I retained counsel to pursue the present case, requested that it be filed promptly, and it was filed less than four days later, on Fri., Aug. 13, 2021. I actually received the ballot on the next Tuesday, Aug. 17, 2021.

_A.W. Clark_

**A.W. CLARK  08/25/21**

## HISTORICAL NOTE, ON CALIFORNIA RECALL ELECTIONS

The recall procedure originally was added to the California Constitution in 1911, and provided that: "If a majority of those voting on said question of the recall of any incumbent from office shall vote 'No,' said incumbent shall continue in said office. If a majority shall vote 'Yes,' said incumbent shall thereupon be deemed removed from such office, upon the qualification of his successor" Cal. Const., former Art. XXIII, § 1, par. 6. The statutory embodiments of this provision set forth the same sort of mechanism for deciding how the votes in the recall would be counted. *See* Cal. Pol. Code § 4021a, added by Stats.1911, c. 342 p. 581 ("if the majority of those voting on said question of the recall of any incumbent shall vote 'No,' said incumbent shall continue in said office. If a majority shall vote 'Yes,' said incumbent shall thereupon be deemed removed from such office, upon the qualification of his successor."); Cal. Elec. Code § 11065, added by Stats.1939, c. 26, p. 301 ("If a majority or exactly half of those voting on the question of the recall of any incumbent from office vote 'No,' the incumbent shall continue in office. If a majority vote 'Yes,' the incumbent shall be deemed recalled from office, upon the qualification of his successor. '); Cal. Elec. Code § 27007, added by Stats.1974, c. 233, p. 439 ( 'If a majority of those voting on said question of the recall of any incumbent from office shall vote 'No,' said incumbent shall continue in said office. If a majority shall vote 'Yes,' said incumbent shall thereupon be deemed removed from said office, upon the qualification of his successor."). It was not until the Elections Code revision of 1976 that this binary mechanism for counting the votes was split into separate sections and the words "recall election" were used in one, and "recall proposal" were used in the other. *See* Cal. Elec. Code § 27343, added by Stats.1976, c. 1437, p. 6451 ("If one-half or more of the votes at a recall election are 'No,' the officer sought to be recalled shall continue in office""); Cal. Elec. Code § 27344, added by Stats.1976, c. 1437, p. 6451 ("if a majority of the votes on a recall proposal are 'Yes' the officer sought to be recalled shall be removed from office upon the qualification of his successor.").

# ADDENDUM

## HISTORICAL NOTES

The 1976 amendment renumbered the section without changing the text.

Amendment of this section by A.C.A. No. 7 (1986) was approved by the voters at the primary election held June 3, 1986.

The 1986 amendment designated the section as subd. (a); rewrote subd. (a); and added subd. (b).

. . .

### Effective: January 1, 2011

- Stats.2009, Res. c. 2 (S.C.A.4) (Prop. 14), provides in pertinent part:
- "*Resolved by the Senate, the Assembly concurring,* That the Legislature of the State of California at its 2009-10 Regular Session commencing on the first day of December 2008, two-thirds of the membership of each house concurring, hereby proposes to the people of the State of California that the Constitution of the State be amended as follows:

. . .

"Second-- The People of the State of California hereby find and declare all of the following:

"(a) Purpose. The Top Two Candidates Open Primary Act is hereby adopted by the People of California to protect and preserve the right of every Californian to vote for the candidate of his or her choice. This act, along with legislation already enacted by the Legislature to implement this act, are intended to implement an open primary system in California as set forth below.

"(b) Top Two Candidate Open Primary.

All registered voters otherwise qualified to vote shall be guaranteed the unrestricted right to vote for the candidate of their choice in all state and congressional elections. All candidates for a given state or congressional office shall be listed on a single primary ballot. The top two candidates, as determined by the voters in an open primary, shall advance to a general election in which the winner shall be the candidate receiving the greatest number of votes cast in an open general election."

27

# California's recall election will cost $276 million, recall date set for Sept. 14

**Following certification of the recall petition, Lt. Gov. Eleni Kounalakis announced that Tuesday, Sept. 14 would be the date of the recall election.**

Author: Matthew Nuttle
Published: 12:18 PM PDT July 1, 2021
Updated: 6:14 PM PDT July 1, 2021

SACRAMENTO, Calif. — The cost of California's upcoming gubernatorial recall election has been finalized at a whopping $276 million, according to the State Finance Department.

Cost estimates released in early June 2021 had the total at $215 million, but according to finance officials, that cost went up following the passage of Senate Bill 152, which accelerates the recall process by allowing lawmakers to skip the 30-day legislative review as long as they set aside money for counties to pay for the costs of the election, according to reporting by the Associated Press.

The original estimate assumed the election would happen on a regularly scheduled election date. With SB 152, the updated estimated county-by-county cost for a special election came to $243.6 million, plus $32.4 million to the Secretary of State's Office to run the special election.

**RELATED: GOP cries foul as California OKs new governor recall rules**

State Republicans have decried SB 152 -- which passed on party-line votes -- saying it essentially amounts to cheating. Democrats argued the change would allow the election to happen as soon as possible and enable as many voters as possible to participate.

"Any child can tell you that changing the rules in the middle of a game is cheating," Assemblymember Kevin Kiley, (R - Dist. 6), told ABC10.

ABC10 political analyst Steve Swatt somewhat agreed with the GOP's argument.

"The Democrats, of course, would like to have it sooner rather than later because they believe the governor is in a good position now. And the longer you wait, the more things can go wrong," Swatt said.

Moving up the election does potentially eliminate the possibility of a disaster, such as a massive wildfire, that could potentially sway voters. It also could backfire if Democratic voters are not motivated to engage in a special election.

After the cost for the recall was finalized by the Finance Department, Secretary of State Shirley Weber also announced certification of the recall petition.

That certification was then handed off to Lt. Gov. Eleni Kounalakis, who by law was required to set a date for the election "not less than 60 days nor more than 80 days" from July 1. Just before 2:30 p.m., Kounalakis announced that Tuesday, Sept. 14 would be the date of the recall election.

# EXHIBIT 1