1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10

11   A.W. CLARK,                          Case No. CV 21-6558 MWF (KSx)

12            Plaintiff,                  **ORDER DENYING PLAINTIFF'S MOTION (1) FOR DECLARATORY RELIEF AND (2) PRELIMINARY INJUNCTION [10]**
13        v.
14   SHIRLEY N. WEBER,
15            Defendant.
16

17        The United States Constitution and its principle of "one person, one vote" does
18   not prevent California from holding its ongoing gubernatorial recall election as
19   scheduled.  There is nothing unconstitutional about placing in one ballot a vote for or
20   against the recall of the Governor and then a vote for a replacement candidate.
21        Before the Court is Plaintiff A.J. Clark's Motion (1) for Declaratory Relief and
22   (2) Preliminary Injunction, Declaring the Unconstitutionality of Cal. Const. Art. II,
23   § 15(c), and Enjoining the Sept. 14, 2021 California Recall Election Based on the
24   Unconstitutionality of § 15(c), filed on August 14, 2021 (the "Motion").  (Docket No.
25   10).  As the title indicates, the Motion seeks declaratory relief from this Court that
26   California's recall procedure violates the United States Constitution and further
27   requests a preliminary injunction either to halt the election entirely or to require a
28   ballot that includes the Governor among the replacement candidates.

1        In addition to the Motion, the Court has reviewed the Declaration of A.W.

2    Clark in Support of the Motion (the "Clark Decl."). (Docket No. 12). Plaintiff R.J.

3    Beaber's Declaration (Docket No. 11) was not considered by the Court because

4    Plaintiff Beaber was voluntarily dismissed from this action on August 18, 2021. (*See*

5    Docket No. 21).

6        On August 24, 2021, Defendant Shirley N. Weber, California Secretary of

7    State, filed her Opposition to Plaintiffs' Motion for Declaratory Relief and

8    Preliminary Injunction (the "Opposition"). (Docket No. 23). On August 26, 2021,

9    Plaintiff Clark filed a Reply on Motion for Declaratory Relief and Preliminary

10   Injunction (the "Reply"). (Docket No. 26). The briefs were filed pursuant to a

11   stipulated schedule. (Docket No. 19).

12        The Governor is not a party to this lawsuit.

13        The Motion is **DENIED**. Plaintiff has established none of the requirements for

14   issuing a preliminary injunction. This request is for a mandatory injunction, which are

15   disfavored. Plaintiff's federal constitutional rights simply are not violated; therefore,

16   there is no chance that Plaintiff could prevail on the merits. Plaintiff has established

17   no equitable factor favoring a preliminary injunction. In particular, the delay in filing

18   this lawsuit means that Plaintiff seeks to halt an election that, in fact, has already

19   begun, which is a strong indicator that equitable factors are not present here. Finally,

20   decisions of the Supreme Court and the Ninth Circuit strongly indicate that an

21   injunction should not issue.

22        The request for declaratory relief is denied for the same reasons, and also for

23   being procedurally improper. (*See* Opposition at 15 n.12).

24        This Court has an independent duty to determine jurisdiction, which includes

25   Article III standing. A jurisdictional analysis in this area can be complicated. *See*

26   *Townley v. Miller,* 722 F.3d 1127, 1133-36 (9th Cir. 2013) ("*Townley II*") (analyzing

27   the three prongs of standing in voting cases showed that no plaintiff had standing).

28   Here, Plaintiff has sworn that he intends to vote "No" on the first question and would

have voted for the Governor on the second question were that an option.  (Clark Decl., ¶ 4).  The requested relief is consistent with this desire.  In addition, Defendant does not dispute that Plaintiff has standing.  Therefore, this Court will assume that Plaintiff has standing.  The Court likewise assumes that its exercise of jurisdiction here does not offend the Eleventh Amendment.

The Court vacated the hearing on the Motion, (*see* Docket No. 22), for the following reasons:

(1)  There are no disputed facts that require an evidentiary hearing;

(2)  Hearings in civil cases are not required during the pandemic pursuant to General Order 21-08;

(3)  The briefing on these issues of law would not be materially enhanced by oral argument, *see* Fed. R. Civ. P. 78(b); Local Rule 7-15;

(4)  Plaintiff may more quickly seek review in the Ninth Circuit, *see Townley v. Miller*, 693 F.3d 1041, 1043 (9th Cir. 2012) (*Townley I*) (Reinhardt, J., concurring) (criticizing the district court for using a delayed hearing as a tactic to defeat appellate review, among other things); and

(5)  If Plaintiff does not file an appeal, then all Californians — including voters, the Governor, and the forty-six replacement candidates — will benefit from knowing as soon as possible that the election will continue to proceed as scheduled.

The pending ex parte applications seeking leave to intervene will be denied in a separate order.

# I.

# **BACKGROUND**

The California Constitution has provided for the recall of elected officials, including a governor, since 1911.  (Cal. Sec'y of State website, www.sos.ca.gov; Reply at 26 (Historical Note on California Recall Elections)).  There have been fifty-four previous attempts to recall a governor, but the only successful recall was that of

Governor Gray Davis in 2003, in which essentially the same procedure and ballot language was used as in this election.  (*Id.*)  The Opposition describes the procedure set forth in the California Elections Code for a recall election to be successfully sought and then scheduled.  (Opposition at 2-4).  Following that procedure, on July 1, 2021, the Lieutenant Governor proclaimed a special statewide gubernatorial recall election to be held on September 14, 2021.  (*Id.*).

Pursuant to Elections Code section 11320(a), the recall ballot has two parts. First, using language required by statute, the ballot asks, "Shall GAVIN NEWSOM be recalled (removed) from the office of Governor?"  (Cal. Sec'y of State website, www.sos.ca.gov; Opposition at 3-4).   The voter then chooses between "Yes" and "No."  If a majority of voters choose "Yes," then the Governor is removed.  (*Id.*). Second, a voter may vote for one candidate among the forty-six qualified candidates to replace the Governor, with the candidate receiving a plurality becoming the new governor.  Cal. Const., art. II, § 15(c).  The Governor is specifically barred from being a candidate to replace himself.  *Id.*  It is this provision in section 15(c) that prompted this lawsuit.

Defendant submitted the Declaration of Joanna Southard, Assistant Chief of the Elections Division of the California Secretary of State's Office ("Southard Decl."). (Docket No. 23-1).  The Reply does not dispute her testimony, which essentially confirms that, pursuant to the Elections Code, the replacement candidates were qualified, ballots were printed and mailed, voter information pamphlets were printed and mailed, and ballots have started to be returned.  (Southard Decl., ¶¶ 3-6).  While the recall election is described as occurring on September 14, 2021, it is better thought of as a process that has already started and will end when all the votes cast by September 14, 2021, are counted and the election results certified.

California has spent $273 million or more on the election, which Plaintiff characterizes as money "out the door," (Reply at 18), and Defendant characterizes as the cost to California of granting an injunction, (Southard Decl., ¶ 7).

1

**II.**

2

**DISCUSSION**

3

**A. The Standard for Issuing a Preliminary Injunction Here is Extremely**

4

**High.**

5

As noted above, Plaintiff seeks a preliminary injunction pursuant to Federal

6

Rule of Civil Procedure 65.  "A plaintiff seeking a preliminary injunction must

7

establish that he is likely to succeed on the merits, that he is likely to suffer irreparable

8

harm in the absence of preliminary relief, that the balance of equities tips in his favor,

9

and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council,*

10

*Inc.*, 555 U.S. 7, 20 (2008) (rejecting "possibility" standard and holding that plaintiffs

11

must "demonstrate that irreparable injury is *likely* in the absence of an injunction").

12

"A preliminary injunction is an 'extraordinary and drastic remedy' . . . ; it is never

13

awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689-90 (2007).

14

"[T]he burdens at the preliminary injunction stage track the burdens at trial."

15

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429

16

(2006).

17

A preliminary injunction can be either a prohibitory injunction or a mandatory

18

injunction.  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d

19

873, 878 (9th Cir. 2009) (vacating district court's grant of mandatory injunction for

20

product recall and restitution); *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir.

21

2017) (noting the distinction between a prohibitory and mandatory injunction and

22

"assum[ing] without deciding that the [injunction in question] is mandatory").

23

A prohibitory injunction "preserves the status quo" while a mandatory

24

injunction "orders a responsible party to take action."  *Marlyn Nutraceuticals*, 571

25

F.3d at 878.  A mandatory injunction is disfavored and therefore requires a higher

26

showing.  *Id.*; *see generally* 5D Charles Alan Wright & Arthur R. Miller, *Federal*

27

*Practice & Procedure* § 2948, Grounds for Granting or Denying a Preliminary

28

Injunction (3d ed. 2018) ("Movant seeking a preliminary injunction that falls into one

1  of the categories of historically disfavored preliminary injunctions, which either alter

2  the status quo, are mandatory preliminary injunctions, or afford the movant all the

3  relief that it could recover at the conclusion of a full trial on the merits, must satisfy a

4  heightened burden.").

5       Defendant correctly argues that the injunction here would be mandatory.

6  (Opposition at 15-16). A mandatory injunction is "particularly disfavored." *Garcia v.*

7  *Google,* 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quoting *Stanley v. Univ. of S.*

8  *Cal.,* 13 F.3d 1313, 1320 (9th Cir. 1994 (internal citations omitted)). "The 'district

9  court should deny such relief unless the facts and law clearly favor the moving

10  party.'" *Garcia,* 786 F.3d at 740 (quoting *Stanley*, 13 F.3d at 1320). "In plain terms,

11  mandatory injunctions should not issue in 'doubtful cases.'" *Garcia,* 786 F.3d at 740

12  (quoting *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust,* 636 F.3d

13  1150, 1160 (9th Cir. 2011)).

14       As the Court explains below, Plaintiff does not demonstrate a federal

15  constitutional violation at all. But even if this Court erred in that conclusion, it cannot

16  be doubted that the law and facts are not "clearly" on Plaintiff's side. The mandatory

17  nature of this injunction means that Plaintiff could not possibly prevail.

18       In the Motion, Plaintiff argues that an injunction is both warranted under the

19  *Winter* test and that *Winter* did not abrogate an alternative "sliding scale" test that, in

20  Plaintiff's view, also justifies issuance of an injunction. (Motion at 6-7). Even if the

21  alternative test still exists, Plaintiff is mistaken because (1) Plaintiff ignores the

22  mandatory nature of the injunction; (2) Plaintiff has no likelihood of success on the

23  merits; and (3) Plaintiff's putative hardship is nugatory, while the putative hardship on

24  California is extraordinary.

25       In the Reply, Plaintiff contends that this injunction is not mandatory because it

26  would require Defendant to do nothing and that *Garcia* applies only to copyright

27  cases. (Reply at 22-23). Neither argument is persuasive. The status quo is

28  unmistakably that the election is already taking place. The reasoning and citations in

1    *Garcia* as to mandatory injunctions are not dependent on the dispute in that case,

2    which was indeed a copyright dispute as Plaintiff argues.

3    **B.  Plaintiff has no Likelihood of Success on the Merits.**

4    The United States Constitution guarantees the right to vote and that every vote

5    be weighted equally:  The "one person, one vote" doctrine requires, for example, that

6    legislative districts be equal in population.  *See, e.g.*, *Reynolds v. Sims*, 377 U.S. 533,

7    555 (1964) (Alabama could not assign one state senator to each county).  Included in

8    the doctrine is the concept that a vote may not be "diluted" by having other votes or

9    voters weighted more heavily.  *Id.*  However, the right to vote inherently has common-

10   sense limitations because every conceivable candidate or issue cannot be presented on

11   every ballot.  *Burdick v. Takushi,* 504 U.S. 428, 433 (1992); *see also Soltysik v.*

12   *Padilla,* 910 F.3d 438, 444 (9th Cir. 2018).

13   Plaintiff's argument is that Plaintiff, as a supporter of the Governor, only gets to

14   vote once, *i.e.*, a "No" vote on the first question.  Opponents of the Governor, on the

15   other hand, get to vote twice, first by voting "Yes" on the first question in favor of

16   recall and then by voting for one of the replacement candidates.  (Motion at 4).

17   Implicit in the Motion and explicit in the Reply is the notion that Plaintiff (as a

18   supporter of the Governor) has a federal constitutional right not to see a replacement

19   candidate elected with a plurality that is smaller than the "No" vote on the first

20   question.  (*See* Reply at 9-10).

21   Defendant correctly argues that the ban in section 15(c) on the recalled

22   officeholder's being listed as a replacement candidate is not subject to strict scrutiny,

23   based on *Burdick* and *Public Integrity Alliance*, 836 F.3d 1019, 1024 (9th Cir. 2016).

24   (Opposition at 7-8).  The argument in the Reply to the contrary is nothing more than

25   the unsupported assertion that Plaintiff's right to vote is severely burdened.  (Reply at

26   8-10).

27   ///

28   ///

-7-

There simply is no Fourteenth Amendment violation here, under either the Due Process Clause or the Equal Protection Clause or the Privileges and Immunities Clause, for these reasons:

**First,** as a matter of logic and common sense, it simply is not true that Plaintiff only gets to vote once while others get to vote twice.  Plaintiff and all California voters have the opportunity to vote two distinct issues.  The first is whether the Governor should be recalled.  Plaintiff and all other voters have the opportunity but not the obligation to vote for a replacement candidate.  Obviously, that vote only matters if a majority of the voters turn out to have voted "Yes."  Plaintiff and all other voters have the same equal vote as to who the Governor's replacement should be.  Voters do not need to vote on the recall in order to vote on a replacement candidate.

Section 15(c) meets the *Burdick* test by preventing the anomalous result that an officer recalled by a majority would be immediately returned to office by a slim plurality.  That limitation makes sense.  Plaintiff's argument ignores that a majority of the voters must first vote to remove the Governor before votes for the replacement candidates mean anything.

Plaintiff plainly feels disgruntled that a replacement candidate with a small plurality might replace a sitting governor who, based on a robust "No" vote, might well have beaten that same replacement candidate in a general election.  As that may be, such disgruntlement raises no federal constitutional issues and certainly does not give the federal judiciary the right to halt the mammoth undertaking of this gubernatorial recall election.  No one suggests that a state constitutional mechanism for recall is in itself unconstitutional.  If the possibility for recall exists, then a means for selecting a successor must be specified.  No doubt, it would be cheaper and simpler to replace a sitting governor with the lieutenant governor.  But for over one hundred years, California has chosen a different procedure.  The United States Constitution does not prevent that.  California voters who are dubious of a "plurality ///

1   lottery" among the forty-six replacement candidates have the opportunity to vote

2   "No."

3         Reading the Reply, one would think that only those voters who voted "Yes" on

4   the first question have the right to vote for a replacement candidate. (Reply at 6 &

5   n.6). That is not correct. All voters have the right to cast a vote on both parts of the

6   ballot or just the first part (recall) or just the second part (choosing among the

7   replacement candidates). Plaintiff's reliance on *Partnoy v. Shelley,* 277 F. Supp. 2d

8   1064, 1076-77 (S.D. Cal. 2003) is therefore misplaced. In *Partnoy*, the district court

9   held that it was unconstitutional to require voters to cast a vote on the first part of the

10  ballot in order for their vote on the second part of the ballot to be counted. This case

11  does not present the same situation because the requirements at issue in *Partnoy* are

12  no longer enforced and will not apply in this election.

13        The Reply raises for the first time the argument that California's Top Two

14  Candidates Open Primary Act (Proposition 14), amending Cal. Const. art II., §§ 5-6, is

15  inconsistent with the lack of a run-off for the dozens of replacement candidates.

16  (Reply at 10-11). Procedurally, this Court will not consider an argument raised for the

17  first time in the Reply. Substantively, it is an issue for the California courts and does

18  not involve federal constitutional issues.

19        ***Second,*** the Motion cites to ***no*** Supreme Court or Ninth Circuit case specifically

20  favoring Plaintiff's dilution argument. (Motion at 4-5). Plaintiff's citations are

21  simply the basic cases establishing a federal constitutional right to vote. (*Id.*) On the

22  other hand, Defendant cites to numerous cases that demonstrate that there is no

23  constitutional violation here, both by showing that section 15(c) is sound under

24  *Burdick* and that violations of "one person, one vote" involved far different

25  circumstances. (*See* Opposition at 9-11).

26        In the Reply, Plaintiff still does not cite to any pertinent case. At most, Plaintiff

27  makes some interesting points that *Partnoy v. Shelley, supra,* is ultimately not a

28  helpful case for Defendant (Reply at 9), but that is not the same as demonstrating that

1   the Supreme Court or the Ninth Circuit would deem California's procedure to be a

2   violation of the Fourteenth Amendment.  The challenge in *Partnoy* was also brought

3   before the ballots were printed.

4       Because section 15(c) does not violate "the one person, one vote" doctrine,

5   there is no federal constitutional violation, and therefore, Plaintiff has shown no

6   likelihood of success on the merits.

7       **C.  <u>Plaintiff has not Established the Equitable Factors for a Preliminary</u>**

8           **<u>Injunction</u>**.

9       This Court adopts the reasoning of Defendant that all the other equitable factors

10  are against issuing a preliminary injunction.  (Opposition at 12-15).  Specifically, the

11  Court in its discretion finds and holds that Plaintiff will suffer no irreparable harm and

12  the balance of equities and the public interest do not favor Plaintiff.  (*Id*.).

13      The Court emphasizes two of Defendant's arguments, delay and the Ninth

14  Circuit decision in *Southwest Voter*.  In the Ninth Circuit, delay (as laches) is not a

15  basis in itself to deny a preliminary injunction, but it may be considered in

16  determining whether Plaintiff has established the equitable factors.  *Arc of California*

17  *v. Douglas,* 757 F.3d 975, 990 (9th Cir. 2014) (as but one factor, courts are "loath" to

18  deny an injunction based on delay alone); *Oakland Tribune, Inc., v. Chronicle Pub.*

19  *Co.,* 762 F.2d 1374, 1377 (9th Cir. 1985).  This Court agrees with Defendant that the

20  delay between the certification on July 1, 2021, and the filing of this lawsuit on

21  August 13, 2021, demonstrates that the equitable factors are not met here.

22      Plaintiff attempts to justify the delay by arguing that there was no standing

23  before the actual receipt of the ballot.  (Reply at 20).  The Court disagrees, although

24  the Court for this Motion accepts the truthfulness of the assertion that Plaintiff did not

25  focus on this issue until receipt of the ballot.  Regardless of Plaintiff's subjective

26  knowledge or intentions, Plaintiff did not need to wait until receiving a ballot to file

27  this lawsuit.  Just as this Court accepts Plaintiff's testimony regarding the intention to

28  vote, standing similarly could have been established at any time after July 1, 2021.  As

of that date, the California Constitution and the Elections Code established the procedure that would be followed here.  By Plaintiff's logic, a sincere lack of knowledge would justify an injunction request brought on September 13, 2021.  And even if the delay does not bear on Plaintiff's harm, it still bears on the balance of hardships.

The second argument to emphasize is that Defendant correctly relies on *Southwest Voter Registration Education Project v. Shelley,* 344 F.3d 914, 918 (9th Cir. 2003), in which the Ninth Circuit en banc reversed a panel decision that had reversed the district court's refusal to halt the recall election of Governor Davis. (Opposition at 13-14).  In *Southwest Voter*, the Circuit noted that "[i]nterference with impending elections is extraordinary [citing *Reynolds*] and interference with an election after voting has begun is unprecedented." *Id*. at 919.  It is true that the Circuit in a later en banc decision upheld an injunction against a new Arizona election statute and distinguished *Southwest Voter*.  *See Feldman v. Arizona Secretary of State's Office,* 843 F.3d 366, 368-69 (9th Cir. 2016) (en banc) (upholding an injunction that preserved the historic status quo).  However, the Ninth Circuit did so on grounds that only strengthen the applicability of *Southwest Voter* to the facts here.  In this Court's view, the decision in *Southwest Voter* is a sufficient reason in itself to deny the Motion.

Accordingly, the Court rules that Plaintiff has failed to establish the equitable factors that would justify a preliminary injunction.

### D. <u>Other Caselaw Strongly Supports Denying the Motion</u>.

There are two sets of cases that, while not directly on point and not cited by the parties, strongly support this Court's refusal to issue a preliminary injunction.  The first set of cases is *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam) and its progeny, which stand for the proposition that "lower federal courts should ordinarily not alter the election rules on the eve of an election."  *Republican Nat'l Comm. v. Democratic Nat'l Comm.,*140 S. Ct. 1205, 1207 (2020).  The precise issues in these

cases do not apply here, but their general thrust is that a district court should hesitate to issue an injunction and thus disrupt state practices when the election is nigh (or, as here, has started).  The Ninth Circuit recognized as much in *Feldman*.  843 F.3d at 368-69.

The second set of cases are the two *Townley* cases cited above.  Both *Townley I* and *Townley II* dealt with the unusual Nevada election option of voting for "none of these candidates," which, as a formal ballot matter, could not change any election result ("none" can't win), but could conceivably have effects in the real world by siphoning enough votes from a candidate to affect the outcome.  The precise holding of *Townley I* was that the district court's issuance of an injunction against "none of these candidates" (and thus the election) was stayed pending appeal, but it was issued as a motions ruling *per curiam* and without meaty analysis on that point.  693 F.3d at 1042.  The precise holding in *Townley II* was that the plaintiffs lacked standing.  722 F.3 at 1133-36.  Although *Townley I* and *II* are not directly applicable, one cannot read these decisions without concluding that a district court should hesitate to enjoin a state election practice, even if odd or — perhaps — regrettable, in the absence of a genuine and clear burden on the right to vote.

### III.

### <u>CONCLUSION</u>

The Motion is **DENIED**.

In theory, this action could continue after the election, just as the action did in *Townley*.  However, the Court fails to see why discovery or further proceedings or a trial would matter; Plaintiff has presented a clever issue of law upon which this Court has ruled, correctly or not.  Accordingly, the Court **ORDERS** Plaintiff A.J. Clark to show cause in writing, if any there be, why summary judgment should not be entered in favor of Defendant Shirley N. Weber, as California Secretary of State, pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff's response to this Order to ///

Show Cause shall be filed on or before **September 21, 2021**. If the parties agree that the action should continue in the usual course for reasons that this Court does not now perceive, then they may stipulate that the Order to Show Cause should be discharged.

     **IT IS SO ORDERED.**

Dated:  August 27, 2021

                                        MICHAEL W. FITZGERALD
                                        United States District Judge